**Kenneth R. Davis II**, OSB No. 971132
davisk@lanepowell.com
**Parna A. Mehrbani**, OSB No. 053235
mehrbanip@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

**Dane H. Butswinkas** (*appearing pro hac vice*)
dbutswinkas@wc.com
**Matthew V. Johnson** (*appearing pro hac vice*)
mjohnson@wc.com
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: 202.434.5000
Facsimile: 202.434.5409

Attorneys for Defendant Fluke Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **FLIR SYSTEMS, INC.,** an Oregon corporation, | No. 3:10-cv-00971-HU |
| Plaintiff, | Defendant Fluke Corporation's MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |
| v. | |
| **SIERRA MEDIA, INC.,** a Washington corporation, and **FLUKE CORPORATION**, a Washington corporation, | |
| Defendants. | |

PAGE 1 -   DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
          MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# I. INTRODUCTION

This case involves a dispute between two business competitors. Plaintiff Flir Systems, Inc. ("Flir") has long engaged in aggressive and misleading marketing concerning the specifications and capabilities of Defendant Fluke Corporation's ("Fluke") thermal imaging cameras. Fluke's response has been to focus its efforts not on litigation, but rather on manufacturing the highest quality thermal imaging cameras possible. Last spring, Fluke demonstrated the quality and ruggedness of its thermal imaging cameras by commissioning a test comparing its cameras with the cameras of two competing manufacturers and publishing a video showing the results (the "drop test video"). Flir responded to the poor performance of its thermal imaging cameras by suing Fluke.

The First Amended Complaint ("FAC") concerns two distinct issues—the drop test video (Counts One, Two, Three, Four and Five) and Fluke's IR Fusion trademark (Count Six). Fluke will address Flir's continued improper use of Fluke's trademark through an infringement counterclaim when it answers the FAC upon final disposition of the Rule 12(b)(6) motions. This Motion concerns Flir's claims relating to the drop test video—specifically Counts Two, Three and Four, which, as described more fully herein, are irreparably flawed and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted.

# II. BACKGROUND

Fluke and Flir manufacture, market, and sell competing thermal imaging cameras. FAC ¶¶ 9, 11. Thermal imaging is the non-contact detection and measurement of infrared energy or temperature, which radiates from all objects, hot or cold. Thermal imaging cameras use a detector to measure infrared energy. The measurements are then converted into a thermal image by assigning colors to correspond to certain temperatures. Thermal imaging cameras are used by a host of maintenance professionals, facility managers and electrical contractors to inspect,

PAGE 2 -   DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
           MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

troubleshoot and maintain electrical, mechanical and process equipment. *Id.* ¶ 9. Use of thermal imaging cameras allows for the detection of potential problems and failures in such equipment.

Durability and ruggedness have long been a hallmark of all Fluke products, including its thermal imaging cameras. To demonstrate this attribute, Fluke posted a video to its website (http://assets.fluke.com/video-TI/Fluke-Drop-Test.html) in March 2010 that showed the results of a test commissioned by Fluke in which five thermal imaging cameras—the Fluke Ti32, Flir's i7, i60 and T400, and the Testo 880—were dropped from a height of two meters to a concrete floor below. *Id.* ¶¶ 16, 35. The test was conducted and filmed by Sierra Media, which also produced the drop test video that was posted on Fluke's website. *Id.* ¶¶ 12, 13.

The drop test was conducted on January 20, 2010. As explained in a methodology document linked to the drop test video, all of the thermal imagers were tested at the same location at the same time. Each of the five thermal imagers was dropped multiple times from two meters off of a drop mechanism to the same location on a solid concrete floor below. After multiple drops, the Fluke Ti32 remained intact and operable, while the other manufacturers' thermal imaging cameras broke apart and/or experienced mechanical failure. *Id.* ¶ 35. The drop test video—which is a little more than a minute-and-a-half in duration—presents the results of the test in a collage format. While it shows the general manner in which the thermal imagers were dropped, the video focuses primarily on the impact of the cameras with the concrete floor. The essence of the drop test video is promotional in nature. It is not, and was never intended to be, a clinical presentation of the entire exercise.

Flir filed its lawsuit on August 17, 2010—five months after Fluke posted the drop test video online. Fluke filed its first Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 30, 2010 (ECF Nos. 22, 23), after the Court granted requests to extend the deadline for responsive pleadings (ECF Nos. 9, 13, 16) to give the parties additional time to discuss resolution of this dispute. Flir did not file an opposition to Fluke's Motion. Flir instead filed the FAC on December 30, 2010. In the FAC, Flir dropped its original Count Two (Unfair

PAGE 3 -   DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
          MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Competition under the Lanham Act—15 U.S.C. § 1125(a)(1)(A)), Count Three (Publication of Injurious Falsehoods), Count Four (Business Disparagement), Count Eight (Temporary, Preliminary, and Permanent Injunctive Relief), and Count Nine (Attorneys' Fees and Costs); while adding claims for Trade Libel/Commercial Disparagement (FAC Count Two), and Intentional Interference with Prospective Economic Relations (FAC Count Three).

The present motion concerns Counts Two, Three, and Four.[1] These claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted.

### III. LEGAL STANDARD

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A claim must "provide the grounds of [the] entitle[ment] to relief" and "requires more than labels and conclusions. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (second alteration in original) (citation and internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 129 S. Ct. at 1949, and, in deciding whether a plaintiff has adequately stated a claim, the court must draw upon both "its judicial experience and common sense." *Id.* at 1950. "While legal conclusions can provide the framework of a

---

[1]    Count Five (Aiding and Assisting) appears to be alleged only against Sierra Media. Accordingly, Fluke does not move separately to dismiss that claim. To the extent the claim is not directed solely at Sierra Media, Fluke incorporates by reference the arguments in Sierra Media's motion to dismiss.

PAGE 4 -   DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

complaint, they must be supported by factual allegations." *Barinaga v. JP Morgan Chase & Co.*, -- F. Supp. 2d --, No. 10-CV-266-AC, 2010 WL 4338326, at *4 (D. Or. Oct. 26, 2010) (quoting *Iqbal*, 129 S. Ct. at 1950). The court need not accept as true any legal conclusions set forth in a pleading. *Id.* Indeed, when "considering a motion to dismiss, a court must distinguish between the factual allegations and legal conclusions asserted in the complaint." *Fisher v. Bank of Am. Home Loans*, No. 10-3079-PA, 2010 WL 4296609, at *1 (D. Or. Oct. 21, 2010) (citing *Iqbal*, 129 S. Ct. at 1949).

## IV. ARGUMENT

In Counts Two, Three and Four, Flir attempts to shoe-horn general allegations that the drop test video is misleading into claims that require more than the facts can support. The deficiencies are not merely the product of inartful pleading. The alleged facts simply do not provide the basis for Flir's Trade Libel/Commercial Disparagement, Intentional Interference with Prospective Economic Relations, or Civil Conspiracy claims. These claims should be dismissed.

**A.    Flir Has Not Properly Pleaded a Claim for Trade Libel/Commercial Disparagement (Count Two).**

Under Oregon law, a claim for trade libel is properly pleaded only when it is alleged that a defendant published a false statement regarding a plaintiff's product with malice, and that the plaintiff suffered special damages or pecuniary harm as a result of the publication of the false statement. *Soloflex, Inc. v. Nordictrack, Inc.*, No. 93-545-JE, 1994 WL 568401, at *13 (D. Or. Feb. 11, 1994) (citing *Woodard v. Pac. Fruit & Produce Co.*, 106 P.2d 1043, 1045 (Or. 1940)).

**1.    The FAC Fails To Identify a False Statement Made About Flir's Thermal Imaging Cameras in the Drop Test Video.**

Flir's trade libel claim is fatally flawed. As the basis for its claim, Flir alleges that the drop test video gives the "false impression" that the Flir cameras broke on initial impact when they in fact withstood multiple drops. FAC ¶ 60. But an allegation that the video leaves a ***"false***

PAGE 5 -    DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

*impression"* is not an allegation that the video contains a ***false statement***. Only the latter can be libelous.

The FAC takes issue with the video because it did not state the number of times that the Flir thermal imaging cameras were dropped. FAC ¶ 35. It is certainly clear that the video did not contain this information. But that omission does not constitute trade libel. Even accepting for the sake of argument that the implied message of the drop test video is that the Flir thermal imaging cameras broke apart on initial impact, only false statements—rather than any imputed meaning—may provide the basis for a claim of trade libel. *Auvil v. CBS 60 Minutes*, 67 F.3d 816, 822 (9th Cir. 1995) (per curiam); *Pond v. Gen. Elec. Co.*, 256 F.2d 824, 828 (9th Cir. 1958) ("imputing a defamatory and malicious meaning to the lacunae" in a communication cannot constitute libel).

In *Janklow v. Newsweek, Inc.*, 759 F.2d 644 (8th Cir. 1985) (en banc), the former Governor of South Dakota sued over allegedly defamatory statements made in a magazine article about the alleged rape of a 15-year-old girl. *Id.* at 646. The plaintiff claimed that he was defamed by the omission of several items of fact from the article, including that he had passed a lie detector test, that the medical examination of the alleged victim showed no evidence of rape, and that a number of federal authorities found that the rape allegation was unfounded. *Id.* at 647 – 48. Upholding the district court, the Eighth Circuit held that omissions cannot constitute libel:

> ***[T]he law does not recognize libel by omission as a tort***. Libel, by definition, consists of the publication of a false and unprivileged fact. Thus, liability may be imposed in a libel case only for an assertion or implication of fact that is false and unprivileged, and ***not for mere omission of a relevant fact***.

*Id.* at 648 (emphases added). The Eighth Circuit clarified that absent an actual false statement—rather than a mere omission of something the plaintiff believes should have been included—there can be no claim for libel. *Id.* ("To the extent Janklow asks this Court to hold Newsweek liable

PAGE 6 -   DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
          MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

for omission of those additional facts that he believes should have been published, but whose omission did not make what was published untrue, we reject his claim.").

Flir's allegations of trade libel in this case are similarly based on omissions rather than actual statements. Flir does not contest that its thermal imaging cameras in fact broke apart during the drop test. And Flir does not—and cannot—allege that the drop test video contains any false statement regarding when the Flir thermal imaging cameras broke apart. Instead, Flir alleges that Fluke's omission of specific information about when the thermal imaging cameras broke apart creates a "false impression." FAC ¶ 60. But an alleged false impression based on the omission of facts cannot provide the basis for a trade libel claim. Accordingly, Count Two of the FAC should be dismissed.

### 2.    Flir Has Not Specifically Stated Special Damages.

A claim for trade libel/commercial disparagement requires pleading of special damages in the form of pecuniary loss. *Soloflex*, 1994 WL 568401, at *13. *See also TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1200 (10th Cir. 2007); Restatement (Second) of Torts § 633 (1977). The requirement that special damages must be specifically pleaded is a matter of federal law. *See Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) (citing *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 269 – 70 (7th Cir. 1983)). When items of special damages are claimed, they shall be "*specifically stated*." Fed. R. Civ. P. 9(g) (emphasis added).

Count Two does not contain any allegations showing an established business, the amount of sales preceding the posting of the drop test video, and the amount of sales following the posting of the drop test video. Instead, Flir makes only a threadbare recital of the damages element, supported by mere conclusory statements:

> Defendants intended the publication of those false and misleading
> facts to result in harm to FLIR's interests having pecuniary value,
> or recognized or should have recognized that it was likely to do so.

PAGE 7 -   DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

FAC ¶ 67. These threadbare allegations are not sufficient to specifically plead special damages under Rule 9(g). One federal district court, after surveying the law from several circuits, articulated the pleading requirement with respect to special damages as follows:

> [I]f the plaintiff desired to predicate its right to recover damages upon general loss of custom, it should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, and facts showing that such loss in sales were the natural and probable result of such publication.

*Isuzu*, 12 F. Supp. 2d at 1047 (alterations and quotation omitted) (dismissing product disparagement claim for failure to specifically plead damages where plaintiff alleged that it "suffered and continues to suffer special damages from the loss of revenue from wholesale and retail sales"). *See also Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 266 F. Supp. 2d 377, 383 (E.D. Pa. 2003) (dismissing claim for commercial disparagement where "Plaintiff does not allege a general decline in business, much less a specific type of pecuniary loss").

As the cases show, simply stating the words "harm" and "pecuniary value" does not satisfy the requirement to plead special damages. Flir must instead state facts that provide specificity regarding the damages it has allegedly suffered due to Fluke's allegedly libelous statement. Flir has failed to allege these necessary facts. Elsewhere in the FAC, Flir alleges a single lost sale of an unspecified amount to an unnamed purchaser, which Flir incorporates in its trade libel/commercial disparagement claim. FAC ¶¶ 40, 52, 58. The allegations are insufficient to state special damages, however, because they do not include basic facts regarding the scope of Flir's business, the amount of sales for a substantial period preceding the publication of the drop test video, and the amount of sales subsequent to the publication. *See Isuzu*, 12 F. Supp. 2d at 1047. This failure to specifically state special damages provides an additional basis for dismissal of Count Two.

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

**B.      Flir Has Failed To Properly Allege a Claim for Intentional Interference with Prospective Economic Relations (Count Three).**

To state a claim for intentional interference with prospective economic relations, a plaintiff must allege:  (1) the existence of a valid business relationship or expectancy; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship; and (6) damages. *Uptown Heights Assoc. Ltd. P'ship v. Seafirst Corp.*, 891 P.2d 639, 651 (Or. 1995) (en banc).  Flir's claim is flawed in two ways.  First, there is no allegation that the alleged economic relationship between Flir and an unnamed customer actually existed prior to the alleged interference by Fluke.  Second, even if—despite the FAC's silence—that relationship did exist, there is no allegation that Fluke knew of it.

**1.      The Alleged Intentional Interference Did Not Disrupt an Existing Economic Relationship.**

The FAC alleges that Flir "has lost at least one sale" because of the drop test video.  FAC ¶ 41.  There is no allegation, however, that an economic relationship actually existed between Flir and this unnamed potential customer prior to August 2010 (the date that the potential customer allegedly watched the drop test video).  *Id.* ¶ 40.  A claim of intentional interference with prospective economic relations must be based on interference with a specific, existing, and ongoing relationship between the plaintiff and a third party.  *Seafirst Corp.*, 891 P.2d at 651; *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1456 (9th Cir. 1983).  A speculative assertion that an economic relationship might have formed in the future but for the alleged interference is not sufficient.  *Rickards*, 704 F.2d at 1456 (rejecting claim based on statements from potential clients that they would have used retained veterinarian services but for

PAGE 9 -    DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
            MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

organization's requirement that it would only list dogs in its registry that had been examined by specially certified veterinarians).

The court in *Westside Center Associates v. Safeway Stores 23, Inc.*, 49 Cal. Rptr. 2d 793 (Cal. Ct. App. 1996), examined the requirement that the alleged interference must disrupt an existing economic relationship in detail. In that case, the ownership of a neighborhood shopping center sued its anchor tenant—Safeway supermarket—for intentional interference with prospective economic advantage. *Id.* at 795 – 96. Plaintiff alleged that Safeway had intentionally interfered with its ability to sell the shopping center by closing the supermarket, by removing the fixtures, and by exercising an option not to renew its lease. *Id.* at 800. Plaintiff appealed from a trial court ruling that the intentional interference claim required disruption of a particular relationship with a known third party. *Id.* at 801.

Attempting to find some ground rules for the tort in the face of common law that was "fast approaching incoherence," the court examined the sufficiency of claims based not on interference with an existing economic relationship, but instead on a speculative lost opportunity and hope for a prospective relationship with a future benefit. *Id.* at 803 – 04 (quotations omitted). After an extensive evaluation of relevant case law, the court answered the question in the negative:

> These requirements *presuppose the relationship existed at the time of the defendant's allegedly tortious acts* lest liability be imposed for actually and intentionally disrupting a relationship which has yet to arise. (See Prosser & Keeton, The Law of Torts, *supra*, § 130, at p. 982 ["Intentional interference of course presupposes knowledge of the plaintiff's contract or interest . . ."].) The authors of BAJI No. 7.82 evidently understood the elements of the tort in this way; the instruction requires that *"[a]n economic relationship existed between the plaintiff and [a third party]*, containing a probable future economic benefit or advantage to plaintiff . . ."

PAGE 10 - DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

*Id.* at 805 (alterations in original) (emphases added).  The *Westside Center* court thus rejected the plaintiff's claim for intentional interference with prospective economic advantage because it failed to identify an existing relationship with which the defendant had intentionally interfered. *Id.* at 807.  Flir's allegations similarly fail to identify an existing economic relationship, instead relying on a general theory of lost opportunity.  That theory should be rejected here as it has been by other courts.  *See In re Treon*, Bankr. No. 07-31112-elp7, 2008 WL 65575, at *4 (Bankr. D. Or. Jan. 4, 2008) (no claim for intentional interference with economic relations where plaintiff did not have a valid business relationship with a third party at the time of the alleged interference); *TPS Utilicom Serv., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1106 (C.D. Cal. 2002) (dismissing claim and stating that "an expectation of an economic relation is not actionable.  Rather, an expectation of economic advantage based on an ongoing relationship is required"); *Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C03-05340 JF, 2005 WL 832398, at *8 (N.D. Cal. Mar. 30, 2005) (dismissing claim because "[t]he tort of interference with prospective business advantage applies to interference with *existing* noncontractual economic relations which hold the promise of future economic advantage") (internal quotation omitted).

### 2.  The FAC Fails To Allege that Fluke Knew of Flir's Existing Relationship with a Particular Customer.

Flir's claim for intentional interference with prospective economic relations also fails because nowhere is it alleged that Fluke knew about the specific economic relationship that was allegedly interfered with.  Knowledge of the plaintiff's prospective economic relationship is required to state a claim.  *Willamette Quarries, Inc. v. Wodtli*, 781 P.2d 1196, 1200 (Or. 1989); *United Employer Benefit Corp. v. Dep't of Ins. And Fin.*, 892 P.2d 722, 728 ("[Defendant] must

PAGE 11 - DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

have known of the plaintiff's prospective relationship and intentionally interfered with that relationship."). Indeed, knowledge "is an implicit element of interference." *Caprer v. Nussbaum*, 825 N.Y.S.2d 55, 78 (N.Y. App. Div. 2006). Therefore, a plaintiff cannot establish intentional interference without showing that the defendant knew of the prospective economic relationship. *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1032, 1070 – 71 (D. Kan. 2006). *See also Art Capital Grp., LLC v. Getty Images, Inc.*, 901 N.Y.S.2d 904 (N.Y. Sup. Ct. 2009) (table) *available at*, 2009 WL 2913531, at *8 (dismissing with prejudice plaintiff's tortious interference with prospective business advantage claim because the "complaint [did] not allege that defendants knew about the potential [economic] relationship"); *Westside Ctr.*, 49 Cal. Rptr. 2d at 802 (explaining that a properly stated claim for intentional interference with prospective economic advantage includes "defendant's knowledge of the relationship").

The FAC fails to allege any facts indicating that Fluke had knowledge of Flir's speculative relationship with the unnamed potential customer, even if (despite the silence in the FAC) that relationship existed prior to the alleged intentional interference. Without this knowledge, a claim for intentional interference with prospective economic relations cannot stand. For instance, in *Sunlight Saunas*, the plaintiff, a sauna retailer, alleged that its competitors had created a website for the sole purpose of disparaging its products, and that false statements made on the website had caused the plaintiff to lose potential customers. 427 F. Supp. 2d at 1070. Although the plaintiff named at least four specific individuals who did not purchase saunas as a result of the defendants' allegedly false statements, the court held that the defendants were entitled to summary judgment because the plaintiff had not shown that the defendants *knew* of the potential purchasers. *Id.* at 1070 – 71. Similarly here, Flir's failure (and inability) to

PAGE 12 - DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

allege the knowledge element of its intentional interference with prospective economic relations claim warrants dismissal.

**C.    Flir Has Not Stated a Claim for Civil Conspiracy (Count Four).**

A civil conspiracy is "a combination of two or more persons" who, through "concerted action," intend to accomplish an unlawful purpose or to accomplish a lawful purpose through unlawful means. *Osborne v. Fadden*, 201 P.3d 278, 282 (Or. Ct. App. 2009) (quoting *Yanney v. Koehler*, 935 P.2d 1235, 1238 (Or. Ct. App. 1997), *review denied*, 208 P.3d 963 (Or. 2009)). To establish joint liability under a civil conspiracy theory, plaintiffs must establish the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds with respect to the object or course of action; (4) one or more unlawful, overt acts; and (5) proximate damages. *Id.* Further, "[t]he primary purpose of a conspiracy must be to cause injury to another." *Bonds v. Landers*, 566 P.2d 513, 516 (Or. 1977).

Where a civil conspiracy claim is based on alleged misrepresentation, the elements must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 990 (9th Cir. 2006) (where defendants allegedly misrepresented to the consuming public that insulated glass units were more durable than standard products, holding that, "the object of the alleged conspiracy [was] fraudulent: to misrepresent the properties of the Heat Mirror IGUs[,] Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs to plead fraud with particularity"); *CollegeNET, Inc. v. XAP Corp.*, No. CV-03-1229-HU, 2004 WL 2303506, at *6 (D. Or. Oct. 12, 2004) (applying Rule 9(b) requirements to plaintiff's common law claims and stating "[a]s the cases make clear, labeling the claim as something other than 'fraud' does not shield plaintiff from Rule 9(b)'s requirements.").

PAGE 13 -  DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1.    **The Failure To Sufficiently Plead an Underlying Tort Is Fatal To Flir's Civil Conspiracy Claim.**

As a threshold matter, a claim for civil conspiracy "is not a separate tort or basis for recovery but, rather, a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators." *Osborne*, 201 P.3d at 282. Because Flir has failed to properly plead its claims for trade libel/commercial disparagement or intentional interference with prospective economic relations, neither claim may serve as the underlying tort for a civil conspiracy claim. Accordingly, the civil conspiracy claim must also be dismissed.

2.    **The FAC Fails To Allege Facts Supporting the Existence of a Conspiratorial Agreement.**

Even if Counts Two and Three of the FAC survive this Motion, Flir has failed to properly plead sufficient facts in support of its civil conspiracy claim. The FAC does not contain allegations supporting the existence of a meeting of the minds to accomplish an unlawful purpose or to accomplish a lawful purpose through unlawful means. *Osborne*, 201 P.3d at 282. Because the civil conspiracy claim is predicated on Flir's trade libel/commercial disparagement and intentional interference with prospective economic relations claims, the meeting of the minds between Fluke and Sierra Media must have produced an agreement to accomplish the unlawful purposes that form the bases for those claims. Specifically, the FAC must specifically allege that Fluke and Sierra Media agreed to (1) intentionally and unlawfully interfere with Flir's alleged economic relationship with the unnamed potential customer from a Fortune 100 company (Count Three), and (2) make a knowingly false statement about Flir in the drop test video (Count Two). Neither allegation is present in the FAC.

Flir's single allegation concerning the alleged meeting of the minds includes mere "labels and conclusions" embedded in a "formulaic recitation of the elements of [the] cause of action." *Twombly*, 550 U.S. at 555. It does not meet "plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief,'" *id.* (citation omitted), under notice pleading requirements, much less those of Federal Rule 9(b). The allegation merely states that:

PAGE 14 - DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

> Defendants, whom Sierra's founder and creative director referred
> to as a "team," had a meeting of the minds whereby they decided
> to take steps to accomplish these unlawful acts and omissions.
> Indeed, Sierra was retained and paid by Fluke to assist in the
> design, creation, and publishing of the false Video. Fluke directed
> Sierra to edit the Video in such a fashion that made it misleading,
> and Sierra complied.    Sierra also knowingly signed off on a
> misleading and substantially edited methodology that omitted the
> actual results of the Test and the proviso:  "Imagers were dropped
> repeatedly until significant exterior damage occurred."

FAC ¶ 85. None of these "facts" alleged by Flir support a claim that Fluke and Sierra Media

conspired to either intentionally interfere with the economic relationship between Flir and a

customer or knowingly and maliciously publish a false statement about Flir's thermal imaging

cameras.

It is telling that although Flir substantially revised several of the claims in its Original

Complaint after reviewing documents provided by Fluke and Sierra Media,[2] the only addition to

the civil conspiracy claim is a reference to the statement "Hey team!" at the beginning of an

email.  FAC ¶¶ 30, 85.  The inclusion of this statement, as well as the allegation that Sierra was

retained and paid by Fluke to assist with the drop test video, are mere window dressing on a

flawed claim.  While the statements may indicate that there was a *relationship* between Fluke

and Sierra Media, they do not support the existence of a *conspiratorial agreement*.  Flir's

conclusory allegations fail to "plead 'enough facts' to state a theory of civil conspiracy." *Dean

v. DJO, LLC*, No. 09-1193-AA, 2010 WL 1999295, at *1 (D. Or. May 17, 2010) (quoting

*Twombly*, 550 U.S. at 570).  *See also Yanney*, 935 P.2d at 1238 – 39 (affirming trial court's

dismissal of civil conspiracy claim where allegations were "too vague and conclusory to

constitute a meeting of the minds"); *King v. Deutsche Bank AG*, No. CV 04-1029-HU, 2005 WL

---

[2]    Fluke and Sierra Media provided certain documents at the insistence of Flir in
September/October 2010 while the parties were discussing the potential for resolution of this
dispute.

PAGE 15 -  DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

611954, at *36 (D. Or. Mar. 8, 2005) (dismissing claim for failure to plead elements of civil conspiracy).

### 3.    The Facts Alleged in the FAC Are Not Consistent with an Agreement To Harm Flir.

Flir's failure to properly allege a civil conspiracy is not surprising—the facts simply do not permit such a claim. Contrary to the thrust of the FAC, merely suing two defendants does not automatically convert a false advertising case into a conspiracy. Indeed, stating a claim for civil conspiracy requires the plaintiff to allege facts demonstrating that the defendant consciously agreed to combine with a co-conspirator with the intent to injure or cause harm to the plaintiff. *See Bonds*, 566 P.2d at 516. Merely attempting to "attain a competitive advantage," FAC ¶ 87, is not indicative of intent to cause injury; virtually any action taken by Fluke to sell more thermal imaging cameras will have the incidental effect of reducing Flir's (and other manufacturers') sales. For this reason, it is well accepted that typical actions taken to further legitimate business interests cannot provide the basis for a civil conspiracy claim because the primary purpose is not to cause injury to another. *See Yanney*, 935 P.2d at 1238. *See also Dean*, 2010 WL 1999295, at *2 (dismissing civil conspiracy claim where purpose of agreement was to sell more pain pumps because "these facts do not suggest [or imply that the alleged conspirators] entered into a conspiracy, the purpose of which was to cause harm to plaintiff"); *Bliss v. S. Pac. Co.*, 321 P.2d 324, 327 (Or. 1958) ("[o]bviously inherent in [the definition of civil conspiracy] is the axiomatic corollary that every concerted action by two or more parties is not necessarily a conspiracy. The primary purpose of a conspiracy must be to cause injury to another").

In *Yanney*, the Oregon Court of Appeals reviewed the dismissal of a civil conspiracy cause of action for failure to state a claim. 935 P.2d at 1237. The court disregarded the "allegation that '[t]here was a meeting of the minds between Defendants and Clark on the purposes and goals of Clark's scheme against Plaintiff,' because it [was] a conclusion of law." The court then analyzed the remainder of the allegations relating to the alleged agreement

PAGE 16 - DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

between the parties, finding that the alleged actions were consistent with proper conduct. *Id.* at 1239. Accordingly, the court affirmed the dismissal, finding that "the primary purpose of that agreement was not to injure plaintiffs." *Id.*

Similarly, Fluke's retention of Sierra Media to conduct the drop test and produce the drop test video cannot be construed as an agreement to commit an overt, unlawful act with the intent to harm Flir. Instead, Fluke's commissioning of the drop test and corresponding video is promotional activity undertaken with the legitimate objective of selling more thermal imaging cameras, notwithstanding that Flir would consequently sell fewer thermal imaging cameras as a result. A manufacturer's attempt to use promotional materials to convince customers to purchase its product as opposed to its competitors' products is lawful activity. It is consistent with the "typical goal" of any advertising project between a manufacturer and an advertising company. *Id.* Such actions in the ordinary course of business do not by themselves constitute a conspiratorial agreement—to hold otherwise would place manufacturers and media companies at risk of liability for civil conspiracy anytime they mentioned a competitor's product in an advertisement.

## V. **CONCLUSION**

For the foregoing reasons, the Court should dismiss Counts Two, Three and Four of the First Amended Complaint.

DATED: January 27, 2011

LANE POWELL PC

By_____
Kenneth R. Davis II, OSB No. 971132
Parna A. Mehrbani, OSB No. 053235
Telephone: 503.778.2100

WILLIAMS & CONNOLLY LLP
Dane H. Butswinkas (*appearing pro hac vice*)
Matthew V. Johnson (*appearing pro hac vice*)

Attorneys for Defendant Fluke Corporation

PAGE 17 - DEFENDANT FLUKE CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM