**Devon Zastrow Newman,** OSB #014627
E-mail: dnewman@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, Oregon 97204
Telephone: (503) 796-2944
Facsimile: (503) 796-2900

-and-

**Michael J. Collins** (*Pro Hac Vice*)
E-mail: mjc@bickelbrewer.com
**C. Dunham Biles** (*Pro Hac Vice*)
E-mail: cdb@bickelbrewer.com
BICKEL & BREWER
4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas 75201-4612
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

ATTORNEYS FOR PLAINTIFF FLIR SYSTEMS, INC.

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| FLIR SYSTEMS, INC., an Oregon corporation, | Case No. 3:10-CV-971-HU |
| Plaintiff, | |
| vs. | PLAINTIFF FLIR SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT SIERRA MEDIA, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |
| SIERRA MEDIA, INC. and FLUKE CORPORATION, | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

**PLAINTIFF FLIR SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT SIERRA MEDIA, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

# TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ........................................................................2

II.    FACTUAL BACKGROUND ......................................................................6

     A.    Unable To Compete With FLIR On The Basis Of Price, Quality, And Service, Fluke Resorted To Unlawful Means Of Competition And Enlisted Sierra To Help Create And Publish The False Video. ...........................6

     B.    Defendants Edit The Video Of The Actual Test To Reinforce The Substantially False Representations. ...........................................................7

     C.    The Damage Done. ....................................................................................8

III.   APPLICABLE LEGAL STANDARDS ....................................................9

IV.   ARGUMENT AND AUTHORITIES ......................................................10

     A.    The Motion Should Be Denied Because FLIR More Than Met The Pleading Standards For A Claim For Commercial Disparagement Under Oregon Law. ...........................................................................................10

           1.    FLIR has properly alleged that the Video includes false statements. ........13

           2.    FLIR has alleged that the false statements are attributable to Sierra. ........15

     B.    The Motion Should Be Denied Because FLIR Has Properly Pled A Claim For Intentional Interference With Prospective Economic Relations Under Oregon Law. ...........................................................................................16

     C.    The Motion Should Be Denied Because FLIR Has Properly Pled A Civil Conspiracy Claim Against Sierra. ...........................................................20

           1.    FLIR has pled an underlying tort. ............................................................20

           2.    FLIR has more than adequately alleged a "meeting of the minds." ..........20

           3.    At a minimum, Fluke and Sierra conspired to accomplish a lawful purpose through unlawful means. ..............................................................23

     D.    The Motion Should Be Denied Because FLIR Has Properly Alleged A Claim For Aiding And Assisting. .............................................................25

           1.    FLIR has adequately pled the underlying torts. .......................................26

           2.    FLIR has properly pled that Sierra knew that Fluke's conduct constituted a breach of duty by Fluke to FLIR. .......................................26

           3.    FLIR has properly alleged that Sierra is either liable directly or secondarily. ...............................................................................................27

V.    CONCLUSION ......................................................................................28

**PLAINTIFF FLIR SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT SIERRA MEDIA, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
    1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

Plaintiff FLIR Systems, Inc. ("FLIR") files this Response in Opposition to Sierra Media,

Inc.'s Motion to Dismiss for Failure to State a Claim (the "Motion"), as follows:

## I.

## SUMMARY OF ARGUMENT

Unable to compete with FLIR effectively, Fluke Corporation ("Fluke") resorted to

disparaging FLIR and its products.  In particular, Fluke retained Sierra Media Inc. ("Sierra") to

assist it in producing and widely distributing a video that makes false claims about the durability

of FLIR's Cameras (the "Video").[1]   Ignoring FLIR's detailed factual allegations and the

applicable legal principles, Sierra seeks to dismiss some, but not all, of FLIR's claims

concerning the false and disparaging Video.  In its Motion, Sierra ignores FLIR's well-pled

allegations that:  (1) the Video falsely represents that the FLIR Cameras broke upon initial

impact;[2] (2) the Video falsely represents that the Fluke Camera did not break and remained

functional;[3] (3) Sierra Media, Inc. ("Sierra") was not an independent party retained to conduct an

impartial series of "tests" but instead is a long-time advertising agent for FLIR who not only

produced the Video[4] but actively and knowingly participated in the creation of the false light in

---

[1] *See* Plaintiff FLIR Systems, Inc.'s First Amended Complaint and Jury Demand (the "Complaint") (Dkt. No. 37).

[2] *See id.*  ¶¶ 14, 19, 33-38, 60.

[3] *See id.* ¶¶ 14, 18-19, 39, 49, 60, 92.

[4] *See id.* ¶¶ 12, 19, 26-31, 49, 85-87, 91-93.

**PLAINTIFF FLIR SYSTEMS, INC.'S
RESPONSE IN OPPOSITION TO DEFENDANT
SIERRA MEDIA INC.'S MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**

Page 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

which it placed FLIR's cameras;[5] and (4) as a result of the Video, FLIR has lost at least one identified sale and is likely to lose other specifically identified sales.[6]

Sierra asserts that FLIR's commercial disparagement claim should be dismissed because FLIR has not alleged that the Video includes a false, disparaging statement attributable to Sierra. In addition, Sierra contends that FLIR's claim for intentional interference with prospective economic relations should be dismissed because FLIR has not alleged that Sierra knew of FLIR's prospective economic relations. Sierra also argues that FLIR's civil conspiracy claim should be dismissed because FLIR has not sufficiently pled an underlying tort, a "meeting of the minds," or that the purpose of the conspiracy was to harm FLIR. Finally, Sierra contends that FLIR's aiding and assisting claim should be dismissed because FLIR has failed to sufficiently allege an underlying tort or that Sierra knew Fluke's conduct constituted a breach of a duty to FLIR. The Motion should be denied because all of those arguments are without merit.

First, FLIR has properly pled a claim for commercial disparagement against Sierra under Oregon law. The Complaint properly alleges that the Video itself constitutes a false statement and that it also contains false statements. In particular, FLIR has pled that: (1) the Video falsely represents that the FLIR Cameras broke on the first drop, the Fluke Camera did not break and remained functional, and that the "test" shown in the video was conducted impartially by an independent third-party;[7] and (2) Sierra is responsible for that statement because it, as Fluke's long-time media and marketing company, made, edited, and published the Video at Fluke's direction despite its knowledge that the representations in the Video are false and disparage the

---

[5] See id. ¶¶ 13, 14, 20-24, 32-39, 85, 91-93.

[6] See id. ¶¶ 40-42, 52, 55, 65.

[7] See id. ¶¶14, 19, 33-39, 40-42, 60.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

FLIR Cameras.[8]  FLIR, therefore, has stated a claim for commercial disparagement against Sierra.  Moreover, FLIR has alleged that Sierra is liable for commercial disparagement because it conspired with and assisted Fluke in its wrongful conduct.[9]

Second, FLIR has stated a claim for intentional interference with prospective economic relations under Oregon law.  In particular, FLIR has alleged that:  (1) as a result of the false and disparaging Video it lost a sale, may lose at least two additional sales and that prospective customers have questioned the durability of its cameras; and (2) the Video was created, published, and shown to prospective FLIR customers by Fluke, including those at a tradeshow where FLIR was present, for the express purpose of interfering with those prospective commercial opportunities.[10]  Those allegations are more than sufficient to state a claim for intentional interference with prospective economic relations.  Accordingly, FLIR has properly pled that Sierra intentionally interfered with its prospective economic relations.

Third, FLIR has properly pled a claim for civil conspiracy.  Sierra was not, as it would have the Court believe, just an innocent vendor.  Instead, as set forth in the Complaint, Sierra was a willing and critical participant in Fluke's plan to disparage FLIR's Cameras.[11]  In fact, FLIR pled that:  (1) Fluke committed the underlying torts of commercial disparagement and intentional interference with prospective economic relations and violated the Lanham Act; (2) Sierra was retained and paid by Fluke to assist in the design, creation, and publishing of the false

---

[8] *See id.* ¶¶ 10, 12-15, 23-24, 31-39, 85.

[9] *See id.* ¶¶ 83-94.

[10] *See id*. ¶¶ 40-42, 77-78.

[11] *See id.* at p. 1; *id.* ¶¶ 10, 12-15, 23-24, 31-39, 49, 60, 64, 84-87, 91-93.

**PLAINTIFF FLIR SYSTEMS, INC.'S
RESPONSE IN OPPOSITION TO DEFENDANT
SIERRA MEDIA INC.'S MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**

Page 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

Video;[12] (3) Fluke and Sierra acted as a "team" during the production of the Video;[13] (4) at Fluke's request, Sierra repeatedly edited the Video and methodology to reinforce the Video's false statements despite its knowledge that those statements were false and disparaging;[14] (6) Sierra knowingly signed off on the false and substantially edited methodology;[15] and (7) Sierra knew the Video was false and disparaging, but nonetheless published and widely distributed the Video for Fluke.[16] Those allegations are more than sufficient to state a claim for conspiracy.[17]

Fourth, FLIR has stated a claim for aiding and assisting. As set forth above, and in FLIR's Response in Opposition to Defendant Fluke Corporation's Amended Motion to Dismiss for Failure to State a Claim, FLIR has properly pled underlying torts, that Sierra knew that the Video constituted a breach of duty owed to FLIR—namely not to disparage its products—and improperly interfered with the sale of the FLIR Cameras, but, nonetheless, provided substantial assistance to Fluke. Accordingly, FLIR has stated a claim for aiding and assisting.

---

[12] *See, e.g., id.* ¶¶ 10, 12-15, 22, 85.

[13] *See, e.g., id.* ¶¶ 15, 26-31, 85.

[14] *See id.* ¶¶ 13-14, 23-24, 31-39, 85.

[15] *See id.* ¶¶ 13-15, 23-24, 85.

[16] *See id.* at p. 1; *id.* ¶¶ 14-17, 23, 85.

[17] *See, e.g., Osborne v. Fadden*, 201 P.3d 278, 283 (Or.Ct.App. 2009).

**PLAINTIFF FLIR SYSTEMS, INC.'S
RESPONSE IN OPPOSITION TO DEFENDANT
SIERRA MEDIA INC.'S MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**                    **Page 5**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

## II.

## FACTUAL BACKGROUND

**A.    Unable To Compete With FLIR On The Basis Of Price, Quality, And Service, Fluke Resorted To Unlawful Means Of Competition And Enlisted Sierra To Help Create And Publish The False Video.**

FLIR is a global leader in manufacturing and marketing infrared cameras and thermal imaging equipment.[18]   Unable to compete effectively with FLIR, Fluke enlisted its long-time media and marketing company, Sierra, to assist with the production and distribution of the intentionally false and misleading Video.[19]   The Video includes a "test" which purports to compare the durability and reliability of one Fluke thermal imaging camera—the Fluke Ti32 (the "Fluke Camera")—to three of FLIR's thermal imaging cameras—FLIR I-7, FLIR I-60, and FLIR T-400 (the "FLIR Cameras")—by dropping them from a height of 2 meters onto a concrete floor.[20]

The Video includes two broad categories of materially false and misleading representations.[21]   First, the "test" shown in the Video was not, as represented therein, either conducted independently or by an independent third-party.[22]   Second, the Video falsely represents that, when the thermal imaging cameras were dropped onto a concrete floor, the FLIR Cameras broke apart and became inoperable upon initial impact, whereas the Fluke Camera

---

[18] *See id.* ¶ 9.

[19] *See id.* ¶ 12.

[20] *See id.* ¶ 18.

[21] *See id.* ¶ 19.

[22] *See id.*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

remained intact and functional.[23]    Specifically, the Video shows the FLIR Cameras being dropped once and exploding into pieces, but shows the Fluke Camera being dropped four times without breaking.  The Video declares:  "Fluke Ti32—17 drops and counting . . . The only rugged thermal imager.  Why waste money on tools that break?"[24]  In truth, however, the FLIR Cameras actually withstood multiple drops—*i.e.,* they did not break on the first drop as portrayed in the Video[25]—and the Fluke Camera did not survive every drop as represented in the Video.[26]

**B.      Defendants Edit The Video Of The Actual Test To Reinforce The Substantially False Representations.**

In order to reinforce their false representations, Defendants intentionally edited the Video to misrepresent the results of the test.[27]  For example, at the direction of Fluke, Sierra revised the Video so as to conceal that what is seen—FLIR Cameras breaking in dramatic fashion the first time they are dropped—is not what actually happened.[28]  In fact, earlier versions of the Video disclosed that the FLIR Cameras did not break on the first drop—however, Defendants deleted those from the Video.[29]  Further, early versions of the Video prior to its "release" disclosed that the "Imagers were dropped repeatedly <u>until significant exterior damage occurred.</u>"  Importantly, that proviso was deleted by Defendants before the Video and its methodology were published.[30]  In addition, at Fluke's request, Sierra signed off on a false and substantially edited

---

[23] *See id.* ¶¶ 19, 60.

[24] *See id.* ¶¶ 14, 18, 19, 39, 60;  *see also* www.youtube.com/watch?v=bFFpWq9h5Ls.

[25] *See* Complaint ¶¶ 14, 19.

[26] *See id.* ¶¶ 14, 18, 19, 39.

[27] *See id.* ¶¶ 14, 20-25, 35-39.

[28] *See id.* ¶¶ 32-39.

[29] *See id.* ¶ 36.

[30] *See id.* ¶ 37 (emphasis added).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

"methodology" that was released to the public to allay concerns that the Video might not appear to be legitimate.[31]  Moreover, although Sierra knew that the Fluke Camera sustained internal damage, Sierra did not correct the Video and, instead continued to assist Fluke with creating, editing, and publishing the Video with the false claims.[32]

After months of selective editing by Fluke and Sierra, in approximately March 2010, Fluke and Sierra published the Video with its intentionally disparaging claims regarding the FLIR Cameras.[33]  The Video aired on YouTube, Facebook, and Twitter, and was made available to download and view on Fluke's website.[34]  In addition, Fluke used the Video at trade shows attended by potential customers of both Fluke and FLIR to disparage FLIR and its cameras to those potential purchasers.[35]

## C.    The Damage Done.

The allegations of the Complaint demonstrate that Defendants created and published the deliberately false Video for the purpose of deceiving consumers of such products and causing injury to FLIR.[36]  Indeed, although Fluke and Sierra knew that the representations made in the Video are false, they:    (1) conceived the Video for the purpose of disparaging Fluke's competitors' products; (2) made the edits designed to conceal the actual facts; (3) included the

---

[31] *See id.* ¶¶ 22-24.

[32] *See id.* ¶ 39.

[33] *See id.* ¶¶ 10, 16.

[34] *See id.*

[35] *See id.* ¶¶ 41-42, 52.

[36] *See id.* ¶ 40.

**PLAINTIFF FLIR SYSTEMS, INC.'S**
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

**Page 8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

methodology letter signed by Sierra, which falsely states that Sierra was an "independent third party;" and (4) knowingly published the Video.[37]

Unfortunately for FLIR, the Video had its intended effect.[38] For example, an employee at a Fortune 100 company, who intended to purchase one of the FLIR Cameras, was overruled by his superior who, after watching the Video, stated that FLIR's Cameras are "way too sensitive if they get dropped," and thus purchased the Fluke Camera instead.[39] In addition, two other prospective customers have indicated that because of the false durability concerns depicted in Video they may purchase a Fluke camera rather than a FLIR camera.[40] Further, Fluke's use of the Video at a trade show prompted prospective FLIR customers to directly question the durability of the FLIR Cameras to FLIR representatives.[41] Accordingly, the false and misleading Video was intended to influence, has influenced, and is likely to influence FLIR customers and prospective FLIR customers.[42]

## III.

## APPLICABLE LEGAL STANDARDS

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are "disfavored and [are] rarely granted."[43] To survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," but instead, need only allege facts that, when assumed to be true, "raise a

---

[37] *See id.* ¶¶ 13, 14, 39, 40.

[38] *See id.* ¶ 40.

[39] *See id.*

[40] *See id.*

[41] *See id.* ¶¶ 41, 52.

[42] *See id.* ¶ 42.

[43] *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248-49 (9th Cir. 1997).

**PLAINTIFF FLIR SYSTEMS, INC.'S**      **Page 9**
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

right to relief above the speculative level."[44]   Moreover, the complaint must be construed liberally and in favor of plaintiff, taking all well-pled allegations as true, and granting plaintiff all reasonable inferences in support of its claims.[45]   A plaintiff is required to plead only enough facts "to state a claim to relief that is plausible on its face"—*i.e.*, "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of that claim."[46]   In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but instead must include only enough facts to raise a reasonable expectation that discovery will reveal supporting evidence.[47]

## IV.

## ARGUMENT AND AUTHORITIES

A.     **The Motion Should Be Denied Because FLIR More Than Met The Pleading Standards For A Claim For Commercial Disparagement Under Oregon Law.**

To allege a commercial disparagement claim,[48] plaintiff must plead that defendant made an untrue or misleading statement which disparages the quality of plaintiff's product or

---

[44] *Hartzell v. US Bank NA*, No. 10-6231-HD, 2010 WL 4641707, at *1 (D. Or. Nov. 5, 2010); *see also Market Trading, Inc. v. AT&T Mobility, LLC*, 388 Fed. Appx. 707, 709 (9th Cir. 2010).

[45] *See Garrido v. Beall Corp.*, No. 10-845-AA, 2010 WL 5129699, at *1 (D. Or. Dec. 10, 2010); *Market Trading, Inc.*, 388 Fed. Appx. 708-09.

[46] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 556).

[47] *See Twombly*, 550 U.S. at 556 ("And, of course, a well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

[48] "Injurious falsehood," "trade libel," "commercial disparagement," "business disparagement," and "product disparagement" are different names for the same cause of action. *See* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:100.  Fluke's assertion that FLIR dropped count three (injurious falsehoods) and count four (business disparagement) is

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

services.[49]  A commercial disparagement claim may be based on unfair competition or libel.[50]  A claim for commercial disparagement based on unfair competition may include false and misleading comparisons of competitors' products.[51]  Special damages are not required if the business disparagement claim is based on unfair competition.[52]

In the context of commercial disparagement, a statement[53] is false and disparaging if the reasonable or average reader would interpret the statement, taken in context, to imply a false assertion of fact that cast doubt upon quality of plaintiff's product.[54]  Defamation by implication

---

wrong because FLIR consolidated them into Count Two (commercial disparagement).  *See* Complaint ¶¶ 58-72.  In addition, Fluke's assertion that FLIR dropped its claims for injunctive relief and attorneys' fees and costs is wrong because those claims were incorporated into other causes of action.  *See generally id.* at p. 24; *id.* ¶¶ 56-57, 69, 71-72, 80-82.

[49]  *See Fin. Programs, Inc. v. Falcon Fin. Servs., Inc.*, 371 F. Supp. 770, 776 (D. Or. 1974) (citing *Aerosonic Corp. v. Trondyne Corp.,* 402 F.2d 223, 231 (5th Cir. 1968)).

[50]  *See Aerosonic Corp.,* 402 F.2d at 231.

[51]  *See id.*

[52]  *See id.*

[53]  A "statement" may be in the form of words or other graphic or physical forms including images and videos.  *See Farnsworth v. Hyde*, 512 P.2d 1003, 1004 (Or. 1973) ("It has been held to be defamatory to publish humorous articles, verses, cartoons or caricatures making fun of the plaintiff."); *Soloflex, Inc.*, 1994 WL 568401, at *4, 13 ("Plaintiff next alleges that defendant makes false visual and textual representations regarding the natural strength curve, and the resistance curves of NordicFlex and Soloflex in relation to the natural strength curve. . . . Because I have found that questions of fact exist as to whether defendant's advertising claims are false, summary judgment cannot be granted on plaintiff's trade libel claim."); RESTATEMENT (SECOND) OF TORTS § 568 cmt. d (2010) ("Defamatory pictures . . . are libels because the defamatory publication is embodied in physical form."); *id.* § 623A cmt. e.

[54]  *See Skoog v. Clackamas County*, No. 00-1733-MO, 2004 WL 102497, at *27 (D. Or. Jan. 12, 2004), *rev'd in part on other grounds*, 469 F.3d 1221 (9th Cir. 2006); *Ishikawa v. Delta Air Lines, Inc.*, 149 F. Supp. 2d 1246, 1254 (D. Or. 2001); *Brown v. Gatti*, 99 P.3d 299, 305 (Or. Ct. App. 2004), *rev'd in part on other grounds*, 145 P.3d 330 (Or. 2006); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 985 (N.D. Cal. 2010); Restatement (Second) of Torts § 629 ("A statement is disparaging if it is understood to cast doubt upon the quality of another's land, chattels or intangible things, or upon the existence or extent of his property in them, and (a) the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

may include omissions that make the published statement untrue.[55]   In addition, although extrinsic evidence—referred to as "innuendo" in the context of defamation claims—may not be used to determine whether a statement is defamatory *per se*,[56] it may be used to prove that a statement that is neutral on its face and in context is nonetheless defamatory.[57]   Therefore, a statement that either declares or implies a false assertion of fact is actionable.[58]   Accordingly,

---

publisher intends the statement to cast the doubt, or (b) the recipient's understanding of it as casting the doubt was reasonable."); *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 924 (3rd Cir. 1990) ("A commercially disparaging statement-in contrast to a defamatory statement-is one 'which is intended by its publisher to be understood or which is reasonably understood to cast doubt upon the existence or extent of another's property in land, chattels or intangible things, or upon their quality, . . . if the matter is so understood by its recipient.").

[55] *See Hickey v. Settlemier*, 841 P.2d 675, 678 n.2 (Or. Ct. App. 1992), *rev'd in part on other grounds*, 864 P.2d 372 (Or. 1993); *see also Coare v. Arizona Repub.*, 972 F.2d 1511, 1523 (9th Cir. 1992); *Toney v. WCCO Television, Midwest Cable and Satellite, Inc.*, 85 F.3d 383, 387 (8th Cir. 1996); *Mohr v. Grant*, 108 P.3d 768, 776 (Wash. 2005); *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978); WILLIAM L. PROSSER AND W. PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 116 at 117 (Supp. 1988).

[56] A defamation per se claim arises when the character of the published statement itself causes the plaintiff economic harm and, therefore, does not require the plaintiff to plead special damages.  *See L&D of Oregon, Inc. v. American States Ins. Co.,* 14 P.3d 617, 621 (Or. Ct. App. 2000); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Starplex Corp.,* 188 P.3d 332, 347 (Or. Ct. App. 2008).  A defamation per quod claim arises when the harm caused by published statement is not apparent from the statement itself and requires the plaintiff to show special damages.  *See L&D of Oregon,* 14 P.3d at 621, 623.

[57] *See, e.g., Marr v. Putnam*, 321 P.2d 1061, 1068 (Or. 1958); *Peck v. Coos Bay Times Pub. Co.*, 259 P. 307, 311 (Or. 1927); *Marr v. Putnam*, 246 P.2d 509, 519 (Or. 1952) ("Innuendo, however, may be 'properly used to point the meaning of the words alleged to have been spoken, in view of the occasion and circumstances, whether appearing in the words themselves, or extraneous prefatory matters alleged in the declaration.'"); *Pandolfo v. Bank of Benson,* 273 F. 48, 51 (9th Cir. 1921); *Toney,* 85 F.3d at 287; RESTATEMENT (SECOND) OF TORTS § 563 cmt. c (2010).

[58] *See Fin. Programs, Inc.,* 371 F. Supp. at 776 ("To support a claim of commercial disparagement, a plaintiff has the burden of establishing that the defendant has made untrue or misleading statements which disparage the quality of the plaintiff's product or services."); *Brown*

PLAINTIFF FLIR SYSTEMS, INC.'S
RESPONSE IN OPPOSITION TO DEFENDANT
SIERRA MEDIA INC.'S MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM

Page 12

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

dismissal for failure to plead a false, disparaging statement "is improper if 'by reasonable implication a defamatory meaning may be found in the communication.'"[59]

### 1.    FLIR has properly alleged that the Video includes false statements.

Sierra contends that FLIR has not stated a claim for commercial disparagement because it has not identified a false, disparaging statement made in the Video.  That contention ignores the well-pled facts.

<u>First</u>, FLIR has sufficiently alleged a false statement.  Indeed, the Video itself is a false statement—the Video falsely asserts that an impartial test conducted by an independent third-party demonstrates that the FLIR Cameras are not sufficiently rugged and the Fluke Camera is. Moreover, the Video contains numerous other false statements that have harmed FLIR.  Indeed, FLIR has specifically pled that:  (1) the Video shows the FLIR Cameras being dropped once onto a concrete floor and breaking dramatically; and (2) that representation is false because, in truth, the FLIR Cameras withstood multiple drops.[60]  In addition, the Complaint states:

> In the Video, Defendants published, without privilege, false and deceptive statements and representations concerning Fluke and FLIR's products, including the false representations that, when dropped from a height of 2 meters onto a concrete floor, the FLIR Cameras broke apart upon initial impact, whereas the Fluke Camera remained intact and operable after every drop.  These statements, representations, and depictions of FLIR's products in the Video are false and misleading.  The FLIR Cameras did not, as shown in the Video, break upon initial impact.  Indeed, in order to

---

v. Gatti, 99 P.3d 299, 305 (Or. Ct. App. 2004), rev'd in part on other grounds, 145 P.3d 330 (Or. 2006).

[59] *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1045-46 (C.D. Cal. 1998) (denying dismissal of business disparagement claim); *see also Reesman v. Highfill*, 965 P.2d 1030, 1034-35 (Or. 1998); *Brown*, 99 P.3d at 307; *Skoog*, 2004 WL 102497, at *27.

[60] *See* Complaint ¶¶ 14, 19, 33-39, 60.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

> convey that false impression, Defendants intentionally made
> several substantial revisions to the Video and the methodology
> they chose to disclose.[61]

That false assertion is made more clear by the context in which it was made. For example, while the Video shows the FLIR Cameras being dropped only once and breaking, it:[62] (1) does not show the actual results of the "test" for the FLIR Cameras;[63] (2) shows the Fluke Camera being dropped four times without breaking;[64] and (3) states the alleged results of the "test" in regard to the Fluke Camera as: "Fluke Ti32—17 drops and counting . . . The only rugged thermal imager. Why waste money on tools that break?"[65] An average viewer watching the Video would interpret the Video as implying, if not in fact explicitly representing, that the FLIR Cameras broke the first time they were dropped.[66] FLIR, therefore, has pled that the Video makes the false statement, or at a minimum, falsely implies that the FLIR Cameras broke the first time they were dropped.

<u>Second</u>, the false Video and the false statements therein are certainly disparaging of the FLIR Cameras.[67] Indeed, FLIR has pleaded that, as a result of the Video, at least one customer

---

[61] Complaint ¶ 60.

[62] *See id.* ¶¶ 14, 18, 19, 33, 60.

[63] *See id.* ¶¶ 14, 35-36, 64, 85.

[64] *See id.* ¶¶ 18-19; www.youtube.com/watch?v=bFFp Wq9h5Ls.

[65] *See* Complaint ¶¶ 14, 39; www.youtube.com/watch?v=bFFpWq9h5Ls.

[66] *See Skoog*, 2004 WL 102497, at *27; *Isuzu Motors Ltd.,* 12 F. Supp. 2d at 1045-46.

[67] *See In re American Continental Corporation/Lincoln Sav. & Loan Securities Litigation*, 845 F. Supp. 1377, 1388 n. 16 (D. Ariz. 1993) ("The common law tort of commercial disparagement applies to those statements which demean the quality of one's goods or services."); *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 924 (3rd Cir. 1990) ("A commercially disparaging statement-in contrast to a defamatory statement-is one 'which is intended by its publisher to be understood or which is reasonably understood to cast

---

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

purchased the Fluke Camera instead of the FLIR Camera, two others have indicated they may purchase a Fluke Camera rather than a FLIR Camera, and others have directly questioned the durability of the FLIR Cameras to FLIR representatives.[68] Accordingly, the Motion should be denied.

## 2.   FLIR has alleged that the false statements are attributable to Sierra.

Sierra's assertion that FLIR has not attributed any false statement to it ignores FLIR's specific factual allegations.  In particular, FLIR has pled that:  (1) Sierra created and published the false Video and "test" for and on behalf of Fluke;[69] (2) the FLIR Cameras did not break on the first drop as represented in the Video;[70] (3) at Fluke's request, Sierra repeatedly edited the Video and methodology to reinforce the Video's false statements despite its knowledge that the representations were false;[71] (4) Sierra revised the Video and the methodology to remove the alleged results for the FLIR Cameras in order to hide the true results of the "test;"[72] (5) at Fluke's request, Sierra knowingly signed off on the false and substantially edited methodology that was

---

doubt upon the existence or extent of another's property in land, chattels or intangible things, or upon their quality, . . . if the matter is so understood by its recipient."); RESTATEMENT (SECOND) OF TORTS § 629 (2010) (same).

[68] *See* Complaint ¶¶ 40-42, 52, 65.  Sierra's reliance on *Reesman v. Highfill*, 965 P.2d 1030, 1034 (Or. 1998) and *United Medical Laboratories, Inc. v. Columbia Broadcasting System, Inc.*, 404 F.2d 706 (9th Cir. 1968) is misplaced because those cases concern defamation, not commercial disparagement claims, which are not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells.  *See, e.g., supra* n. ___.

[69] *See* Complaint at p. 1; *id.* ¶¶ 10, 85, 91.

[70] *See id.* ¶¶ 14, 19, 33, 34, 37, 49, 60.

[71] *See id.* ¶¶ 13-15, 23-24, 85.

[72] *See id.* ¶ 14 ("Sierra revised the Video and the methodology to remove the alleged results for the FLIR Cameras and so as not to divulge that what is seen in the Video—FLIR Cameras breaking in dramatic fashion the first time they are dropped—is not what happened.").

**PLAINTIFF FLIR SYSTEMS, INC.'S**                    Page 15
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

printed on Sierra's letterhead;[73] and (6) Sierra knew that Fluke's claim that its camera did not break was false, and continued aiding and assisting Fluke.[74]  In other words, the Video was created and published by Sierra on behalf of Fluke,[75] despite Sierra's knowledge that the statements therein are false.[76]  Accordingly, FLIR has more than adequately pled that the false statements are attributable to Sierra.[77]

**B.    The Motion Should Be Denied Because FLIR Has Properly Pled A Claim For Intentional Interference With Prospective Economic Relations Under Oregon Law.**

To allege a claim for intentional interference with prospective economic relations under Oregon law, plaintiff must plead:  (1) the existence of a present or prospective business or professional relationship; (2) a third party's intentional interference with that relationship; (3) which is accomplished through improper means or for an improper purpose; (4) a causal relationship between the interference and the damage to the relationship, and (5) resulting

---

[73] *See id.* ¶ 85 ("Sierra also knowingly signed off on a misleading and substantially edited methodology that omitted the actual results of the Test and the proviso:  'Imagers were dropped repeatedly <u>until significant exterior damage occurred</u>.'") (emphasis added).

[74] *See id.* ¶¶ 39, 92.

[75] *See id.* at p. 1; *id.* ¶¶ 10, 85, 91.

[76] *See id.* at p. 1; *id.* ¶¶ 10-14, 16-17, 31-39, 40, 42, 49, 60-61, 66-67, 70, 76, 77, 85-86, 91-93.

[77] Sierra's assertion that FLIR has improperly lumped it in with Fluke by pleading, for example, that:  "In approximately March 2010, Defendants published the Video" is without merit for at least two reasons.  <u>First</u>, Sierra ignores that FLIR has pled specific acts undertaken by Sierra.  *See* Complaint ¶¶ 10, 12-15, 23-24, 27, 30, 31, 39, 85, 91-93.  <u>Second</u>, Sierra ignores that FLIR has alleged that the tortious acts undertaken by Fluke and Sierra were jointly undertaken.  Specifically, Sierra served as Fluke's willing pawn in creating, editing, and publishing the false and disparaging Video.  *See* Complaint ¶¶ 10, 12-15, 22-28, 30, 31, 39, 43, 85, 91-93.  That Sierra physically produced and edited the Video, at Fluke's direction, while knowing that Fluke's motives were untoward, implicates Sierra in Fluke's illicit scheme.

**PLAINTIFF FLIR SYSTEMS, INC.'S**                    **Page 16**
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

damages.[78]  This tort applies to prospective economic relations and gains, whether or not an economic relationship previously existed.[79]  Further, defendant's actual knowledge of a relationship is not required, but instead, as long as defendant knows that interference is likely to occur from his action and is a necessary consequence thereof, his interference is intentional.[80]

---

[78] *See McGanty v. Staudenraus,* 901 P.2d 841, 844 (Or. 1995).

[79] *See, e.g., Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999) (extending the tort to apply to the non-economic activity of interference with a prospective inheritance:  "Although, heretofore, this court has applied that tort only to contractual and business relationships and prospects, we are persuaded that the tort also may, by a reasonable and principled extension, be made applicable to some *noncommercial* relationships and prospects, such as the one alleged by plaintiffs in the present case.") (emphasis added).  Fluke's reliance on *Uptown Heights Assoc. Ltd. P'ship v. Seafirst Corp.*, 891 P.2d 639 (Or. 1995) is misplaced because the court did not hold, as Fluke suggests, that defendant must interfere with a specific, existing, and ongoing relationship between plaintiff and a third-party.  The court merely stated that "a party must allege . . . the existence of a valid business relationship or expectancy." *Id.* at 651 (emphasis added).  Fluke's reliance on *In re Treon*, No. 07-31112-elp7, 2008 WL 65575, at *4 (Bankr. D. Or. Jan. 4, 2008) is also misplaced because the court merely held that there was no valid business relationship where the third-party officially terminated its business relationship with the plaintiff before the defendant's alleged interference took place.

[80] *See, e.g., Browning v. Clinton*, 292 F.3d 235, 242-43 (D.C. Cir. 2002) (Plaintiff stated a claim where defendant—aware that plaintiff was attempting to publish her book—disparaged her book and threatened various publishers); *Buller v. Pulitzer Pub. Co.*, 684 S.W.2d 473, 480 (Mo. App. 1984) (Psychic stated a claim by alleging that:  (1) a newspaper article disparaged her; (2) her business depended on referrals that were based on her reputation and good name; (3) she had an expectation of future business based on referrals; and (4) defendants were aware of the referral nature of her business.); *Defino v. Civic Center Corp.*, 718 S.W.2d 505, 511 (Mo. App. 1986) (Street vendors stated a claim for intentional interference with prospective economic relations because they alleged that:  (1) they sold merchandise to the public in the area for a number of years; (2) defendants were aware of those business activities; and (3) defendants acted to stop plaintiffs' sales by wrongfully passing an ordinance to eliminate and ban all vendors from the area.); *Knapp v. McCoy*, 548 F. Supp. 1115, 1117 (N.D. Ill. 1982) (Knowledge of interference with both specific potential customers and an identifiable general class of potential customers—radio stations—is a common sense inference from allegation of "palming off".).  In addition, the section of Restatement (Second) of Torts concerning interference with prospective contractual relations does not require knowledge of the prospective relationship.  *See* Restatement (Second) of Torts §766B.  *Compare* Restatement (Second) of Torts § 766—intentional interference with an existing contract—requiring that the actor have knowledge of the contract with which he is interfering) with Restatement (Second) of Torts § 766B—intentional

---

**PLAINTIFF FLIR SYSTEMS, INC.'S**
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

Page 17

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

Sierra's contention that FLIR's claim for intentional interference with prospective economic relations should be dismissed because FLIR has not pled that Sierra knew of FLIR's prospective relationships is without merit.

FLIR was not required to plead that Fluke knew of the exact relationships with which it interfered.[81]  FLIR has alleged that:  (1) Fluke and Sierra created and published the false Video because Fluke was unable to compete with FLIR using lawful means;[82] (2) the false Video was published for "the purpose of deceiving potential consumers of such products and causing injury to FLIR;"[83] (3) the false Video and its methodology were edited to ensure that FLIR's products were disparaged;[84] (4) Sierra designed, created, and published the Video despite its knowledge that the representations are false;[85] (5) the Video, which is targeted at those about to purchase thermal imaging cameras, was widely distributed and published on YouTube, Facebook, Twitter, and Fluke's website;[86] and (6) for fifteen years, Sierra has served as the media and marketing firm for Fluke, FLIR's competitor.[87]  As the long-time media and marketing agent for FLIR's competitor, Sierra knew that every potential customer for thermal imaging cameras is a prospective customer for FLIR.  In fact, Sierra knew that the obvious and natural consequence of

---

interference with <u>prospective</u> contractual relations—not including the requirement that the actor have knowledge of the prospective relationship.

[81] *See supra* n. ___.

[82] *See* Complaint at p. 1; *id.* ¶ 12.

[83] *Id.* ¶ 40; *see also id.* ¶¶ 42, 77.

[84] *See id.* ¶¶ 32-39.

[85] *See id.* ¶¶ 14, 31, 39, 63, 85, 91.

[86] *See id.* ¶ 16-17.

[87] *See id.* ¶ 10.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

its actions would be to interfere with FLIR's prospective economic relations.[88] Through the false Video, Fluke and Sierra intended to convince each and every potential purchaser of an infrared camera to buy a Fluke camera and not a FLIR camera.[89] Accordingly, FLIR has properly alleged the elements of its tortious interference claim.

Second, FLIR has alleged that Fluke knew of the specific prospective economic relationships with which it interfered. For example, FLIR pled: (1) a Fluke employee personally showed the Video to potential FLIR customers identified in the Complaint in order to persuade those customers to buy the Fluke Camera instead of a FLIR camera;[90] (2) Fluke and FLIR are competitors in a specialized market;[91] (3) "at a trade show on October 6 and 7, 2010, Fluke displayed the Video, which then prompted potential FLIR customers to directly question the durability of FLIR's Cameras to FLIR representatives,"[92] and (4) "those false representations were intended, have, and are likely to deceive consumers of FLIR's products and to thereby influence their decision to buy FLIR products."[93] Fluke, therefore, knew Fluke's prospective customers and directly targeted them with the false Video. Accordingly, FLIR has sufficiently alleged a claim for intentional interference with prospective business relations.[94]

---

[88] See id. ¶¶ 40, 50, 62, 64, 67, 70, 76-78, 87.

[89] See id.

[90] See id. ¶ 40.

[91] See id. at p. 1; id. ¶¶ 9, 11.

[92] Id. ¶ 41. Certainly Fluke knew of the many potential economic relationships at the trade show since it attended the event to sell thermal imagers.

[93] Id. ¶ 50; see also id. ¶¶ 70, 77, 87.

[94] In the end, Fluke's argument is merely that FLIR did not add to its Complaint the allegation that: "Fluke knew of these prospective relationships." Accordingly, if necessary, FLIR requests the Court grant it leave to supplement its claim for intentional interference with

PLAINTIFF FLIR SYSTEMS, INC.'S
RESPONSE IN OPPOSITION TO DEFENDANT
SIERRA MEDIA INC.'S MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM

Page 19

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

**C.** **The Motion Should Be Denied Because FLIR Has Properly Pled A Civil Conspiracy Claim Against Sierra.**

A civil conspiracy is "a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means."[95] To state a claim for civil conspiracy, plaintiff must plead: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.[96]

### 1. FLIR has pled an underlying tort.

Sierra's assertion that FLIR's conspiracy claim should be dismissed because FLIR has failed to sufficiently plead an underlying tort is without merit because, as demonstrated herein and in FLIR's Response in Opposition to Defendant Fluke Corporation's Amended Motion to Dismiss for Failure to State a Claim, FLIR has sufficiently alleged claims for commercial disparagement and intentional interference with a prospective economic relationship.[97]

### 2. FLIR has more than adequately alleged a "meeting of the minds."

Sierra's assertion that FLIR failed to sufficiently allege a "meeting of the minds" again ignores FLIR's allegations. In fact, contrary to Sierra's assertion, FLIR does not rely solely on its allegation that "Defendants . . . had a meeting of the minds whereby they decided to take steps to accomplish [the torts of trade libel/commercial disparagement and intentional interference

---

prospective economic relations, pursuant to FED. R. CIV. P. 15 (". . . The court should freely give leave when justice so requires.").

[95] *Bonds v. Landers*, 566 P.2d 513, 516 (Or. 1977).

[96] *See id*.

[97] *See* Plaintiff FLIR System Inc.'s Response in Opposition to Defendant Fluke Corporation's Amended Motion to Dismiss for Failure to State a Claim at IV(A)-(B); Complaint. Moreover, neither Fluke nor Sierra has moved to dismiss the false advertising claim.

**PLAINTIFF FLIR SYSTEMS, INC.'S**                    **Page 20**
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

with prospective economic relations]."  Case law clearly establishes that a formal agreement is not required; instead a tacit understanding inferred from circumstantial evidence is sufficient.[98] In fact, an agreement may be inferred from, among other things, joint participation, the relationship between the conspirator, and activities of the conspirators.[99]

An agreement between Fluke and Sierra to disparage FLIR's Cameras can be readily inferred from the facts FLIR has pled, including that:  (1) Fluke paid Sierra to create and publish the false Video;[100] (2) Sierra has served as Fluke's media and marketing company for fifteen years;[101] (3) Sierra knew that the FLIR Cameras did not break apart after the initial drop as represented in the Video, but still published the Video;[102] (4) Sierra knew that the Fluke Camera did not survive every drop as represented in the Video, but still published the Video;[103] (5) Fluke

---

[98] *See Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301-02 (9th Cir. 1999); *Ee v. Washington County*, No. 07-1728-HA, 2010 WL 680924, at *6 (D. Or. Feb. 10, 2010) ("A conspiracy may be inferred from conduct and need not be proved by evidence of an express agreement."); *In re Sunset Bay Associates*, 944 F.2d 1503, 1516-17 (9th Cir. 1991); *Slade v. Gates*, No. 01-8244-RMT, 2002 WL 31357043, at *2 (C.D. Cal. Oct. 2, 2002) ("Although a meeting is not specifically alleged by Plaintiff in the instant case, it is reasonable to infer that the police officers tacitly agreed to falsely arrest Plaintiff since all officers on the scene are alleged to have participated in the violation."); *State v. Cornell*, 842 P.2d 394, 397 (Or. 1992) ("Because there usually is no formal agreement to begin a conspiracy, the very existence of a conspiracy usually must be inferred from the facts surrounding the statements.").

[99] *See Graham v. Oregon State Penitentiary*, 733 P.2d 39, 40-41 (Or. Ct. App. 1987) ("The existence of an agreement essential to a conspiracy may be inferred from acts or conduct of alleged co-conspirators."); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1479 (9th Cir. 1986); *Pool v. Multnomah County*, No. CIV. 99-597-AS, 2000 WL 1364229, at *7 (D. Or. Sept. 6, 2000); *Bowman v. Tilton*, No. 03cv2224-BTM, 2008 WL 170077, at *14 (S.D. Cal. Jan. 17, 2008).

[100] *See* Complaint at p. 1; *id.* at ¶¶ 10, 49, 60-61, 67, 84-86, 87.

[101] *See id.* ¶ 10.

[102] *See id.* ¶¶ 14, 19, 60, 61.

[103] *See id.* ¶¶ 14, 18, 19, 39, 60, 61.

**PLAINTIFF FLIR SYSTEMS, INC.'S**       **Page 21**
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

and Sierra acted as a "team" during the production of the Video;[104] (6) at Fluke's request, Sierra repeatedly edited the Video and methodology to reinforce the Video's false statements despite Sierra's knowledge that those statements are false and disparaging;[105] and (7) Sierra knowingly signed off on the false and substantially edited methodology that was printed on Sierra's letterhead.[106]  In other words:  (1) Fluke <u>asked</u>, and Sierra <u>agreed</u>, to include representations in the Video it knew were false;[107] (2) Fluke <u>asked</u>, and Sierra <u>agreed</u>, to sign off on a methodology that was printed on Sierra's letterhead, which Sierra knew was false;[108] (3) Fluke <u>asked</u>, and Sierra <u>agreed</u>, to delete the results from the Video and methodology for each of the FLIR Cameras despite its knowledge that such actions would reinforce the Video's false statements;[109] (4) Fluke <u>asked</u>, and Sierra <u>agreed</u>, to edit the Video in order to reinforce the false and disparaging representations;[110] (5) Fluke <u>asked</u>, and Sierra <u>agreed</u>, to publish the Video despite its knowledge that it included false representations;[111] and (6) Sierra was compensated for following Fluke's instructions.[112]  Taken as a whole, those factual allegations are more than

---

[104]  *See id.* ¶ 15 ("In a revealing e-mail dated January 21, 2010, Cardenas referred to Sierra and Fluke employees that participated in creation of the Video as a 'team' and referred to Fluke's products as 'our products.'"); *id.* ¶ 30 ("Sierra's lack of independence and the true nature of the relationship between Sierra and Fluke—partners—is further revealed in an e-mail from Cardenas to Fluke dated January 21, 2010, in which he states:  'Hey team!  Yesterday's shoot was a success in my eyes.  We were able to destroy the 4 competitors imagers.'").

[105]  *See id.* ¶¶ 14, 23 31-39, 49, 60, 62, 66, 85, 91.

[106]  *See id.* ¶¶ 15, 23-24, 85.

[107]  *See id.* ¶¶ 14, 31-39, 85, 91.

[108]  *See id.* ¶¶ 14-15, 23-24, 85.

[109]  *See id.* ¶¶ 14, 23 31-39, 49, 60, 62, 66, 85, 91.

[110]  *See id.*

[111] *See id.* at p. 1; *id.* ¶¶ 10-13, 16-17, 31, 40, 60-61, 85, 91.

[112]  *See id.* ¶¶ 85, 91.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

sufficient to allege a "meeting of the minds" between Fluke and Sierra to disparage FLIR and its cameras, the necessary consequence of which was injury to FLIR.[113]

### 3.    At a minimum, Fluke and Sierra conspired to accomplish a lawful purpose through unlawful means.

Sierra contends that FLIR has not stated a conspiracy claim because:  (1) Sierra's and Fluke's motive was to promote sales of Fluke cameras; and (2) if FLIR has stated a claim, then any vendor who works with a customer on a product would be liable for civil conspiracy if the end product constitutes a tort.  Both assertions are without merit.[114]

First, the assertion that FLIR's conspiracy claim should be dismissed because the primary purpose of the agreement between Sierra and Fluke was to sell more thermal imaging cameras ignores both the law and FLIR's allegations.  A conspiracy to:  (1) accomplish an unlawful purpose; or (2) accomplish a purpose not itself unlawful by unlawful means, is actionable.[115]

---

[113] *See, e.g., Osborne v. Fadden*, 201 P.3d 278, 283-84 (Or. Ct. App. 2009) (holding there is sufficient circumstantial evidence to prove an existence of a civil conspiracy between Gary and Susan to harass the plaintiffs where:  (1) the e-mails and solicitations at issue contained information that Susan did not possess; (2) Dan knew the information; (3) Susan sent the e-mails and solicitations; and (4) the harassment increased as disputes arose between Gary and plaintiffs); *State v. Farber*, 666 P.2d 821, 825 n. 9 (Or. 1983) ("Indeed, the evidence to establish a conspiracy is generally circumstantial."); *Webb v. County of Trinity*, No. CIV. S-10-0012, 2010 WL 4628097, at *4-5 (E.D. Cal. Nov. 4, 2010); *U.S. v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997).

[114] Sierra's reliance on *Flint v. DJO, LLC*, No. 09-1393-AA, 2010 WL 1999302 (D. Or. May 17, 2010) is misplaced because in *Flint* plaintiff alleged only that defendants' intent was to continue selling pain pumps in violation of FDA regulations and not to harm plaintiff. *See Flint*, 2010 WL 1999302, at *2.  Here, however, FLIR alleges that Defendants intentionally created and published the false and disparaging Video in order to deceive FLIR's potential customers— *i.e.,* cause harm to FLIR. *See, e.g.,* Complaint ¶ 85.

[115] *See Bonds*, 566 P.2d at 516; *Heitkemper v. Central Labor Council of Portland and Vicinity*, 192 P. 765, 772-73 (Or. 1920) ("On the other hand, such combinations are actionable conspiracies, although the acts when done by an individual would not subject him to civil liability, when the acts are done with malice; that is, with the intention to injure another without

---

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

The assertion that Fluke intended to profit from the conspiracy—sell more cameras—therefore misses the mark because FLIR alleges that Fluke and Sierra used unlawful means.[116] Indeed, FLIR specifically alleges that Fluke was not able to effectively compete with FLIR on lawful bases (*e.g.*, price, quality, and service) and, therefore, resorted to publishing the false Video that disparages the FLIR Cameras.[117] In addition, FLIR has pled in detail how the Video constitutes unlawful competition—namely false advertising under the Lanham Act, commercial disparagement, and intentional interference with prospective economic relations.[118] Accordingly, at best for Sierra, it conspired with Fluke to accomplish a lawful purpose through unlawful means.

Second, Sierra's assertion that, if FLIR has stated a claim, then any vendor that works with a customer on a product could be held liable for civil conspiracy if the end product constitutes a tort, is simply wrong. FLIR does not allege that Sierra is liable for commercial disparagement and intentional interference with prospective economic relations merely because the Video is false and it produced the Video.[119] Instead, FLIR alleges that Sierra is liable

---

just cause or excuse, or where the natural and necessary consequences of the act, although done to benefit the conspirators, is the prejudice of the public or the oppression of individuals. Intentionally to do that which is calculated, in the ordinary course of events, to damage another in his property or trade is, when done without just cause or excuse, what the law calls an actionable wrong.").

[116] In essence, Sierra argues that two robbers working together are not guilty of conspiracy because their primary purpose was to enrich themselves.

[117] *See* Complaint at p. 1; *id.* ¶ 12.

[118] *See generally* Complaint. Notably, Fluke and Sierra did not limit their unlawful activities to overstating the durability of the Fluke Camera, but intentionally chose to disparage FLIR's products.

[119] In addition, Sierra is liable under the Lanham Act. *See, e.g.*, *Gillette Co. v. Wilkinson Sword, Inc.*, 795 F. Supp. 662, 664 (S.D.N.Y. 1992) *rev'd in part on other grounds*, No. 89 Civ

**PLAINTIFF FLIR SYSTEMS, INC.'S**
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

Page 24

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

because it knew the Video was false and disparaging and, nonetheless, actively participated in the design, creation, and publishing of the false Video,[120] even lending its perceived credibility as an "independent third party" and signing off on a misleading and substantially edited published version of the methodology.[121] Accordingly, Sierra's alleged "parade of horribles" is a red herring.

## D. The Motion Should Be Denied Because FLIR Has Properly Alleged A Claim For Aiding And Assisting.

The main distinction between civil conspiracy and aiding and assisting is that "a conspiracy involves an agreement to participate in a wrongful activity or to commit a tortious act . . . [while] aiding and abetting focuses on whether a defendant knowingly gives 'substantial assistance' to someone who performs wrongful conduct, not on whether the defendant agrees to join the wrongful conduct."[122] Under Oregon law, a defendant is liable for aiding and assisting another's tortious conduct if he: (a) commits a tortious act in concert with another or pursuant to a common design with him; (b) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act; or (c) gives substantial assistance

---

5386 (KMW), 1992 WL 12000396 (S.D.N.Y. Oct. 28, 1992) ("We therefore hold that were an advertising agency participated in the creation, development, and propagation of a false advertising campaign with knowledge of its falsity, in violation of § 43(a), the advertising agency is held jointly and severally liable for the damages caused by that campaign, insofar as the ability to obtain such an award against the principal defendant would be available under the Lanham Act.").

[120] *See, e.g.,* Complaint ¶¶ 10, 12-15, 22-24, 27, 31-39, 49, 60, 66, 70, 84-85, 91-93.

[121] *See, e.g., id*. ¶¶ 13-15, 23-24, 85.

[122] *Stanton v. Bank of America, N.A.*, No. 09-00404, 2010 WL 4176375, at *13 (D. Haw. Oct. 19, 2010) (citation omitted).

**PLAINTIFF FLIR SYSTEMS, INC.'S**        Page 25
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

to the other in accomplishing a tortious result and the person's own conduct, separately

considered, constitutes a breach of duty to the third person.[123]

1.      **FLIR has adequately pled the underlying torts.**

Sierra's assertion that the aiding and assisting claim should be dismissed because FLIR

has failed to plead sufficiently an underlying tort is without merit because, as demonstrated

herein and in FLIR's Response in Opposition to Defendant Fluke Corporation's Amended

Motion to Dismiss for Failure to State a Claim, FLIR has sufficiently alleged claims for

commercial disparagement and intentional interference with prospective economic relations.[124]

2.      **FLIR has properly pled that Sierra knew that Fluke's conduct constituted a breach of duty by Fluke to FLIR.**

Sierra's assertion that FLIR failed to identify which of Fluke's acts Sierra knew

constituted a breach of duty by Fluke ignores that FLIR has pled that Sierra knew that the FLIR

Cameras did not break after one drop as represented in the Video.[125]   Accordingly, FLIR has

---

[123] *See Granewich v. Harding*, 985 P.2d 788, 792 (Or. 1999).

[124]*See* Plaintiff FLIR System Inc.'s Response in Opposition to Defendant Fluke Corporation's Amended Motion to Dismiss for Failure to State a Claim at V(A)-(B); Complaint. Moreover, neither Fluke nor Sierra has moved to dismiss the false advertising claim.

[125] *See, e.g., id.* ¶¶ 13, 14 ("Moreover, Sierra knew that the "results" of the Test shown in the Video are misleading. In particular, Fluke's senior manager and technical advisor for the Video "shoot" informed Sierra that in regard to the Fluke Camera: "I know for a fact that the parallax alignment between the visible and IR camera was completely hosed . . . and I never check[ed] the temperature measurement accuracy." Incredibly, Defendants failed to divulge this information. Instead, Defendants represented that the Fluke Camera survived "17 drops . . . and counting," and was, therefore, "the ONLY rugged thermal imager." Further, Sierra revised the Video and the methodology to remove the alleged results for the FLIR Cameras and so as not to divulge that what is seen in the Video—FLIR Cameras breaking in dramatic fashion the first time they are dropped—is not what happened. The Video is false because it does not divulge that the FLIR Cameras actually withstood multiple drops—*i.e.*, they did not break on the first drop.") (emphasis added).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

more than adequately identified that Sierra knew the Video was false and disparaging and nonetheless published it for Fluke—a breach of duty by Fluke.

**3.**     **FLIR has properly alleged that Sierra is either liable directly or secondarily.**

Finally, Sierra:  (1) apparently claims that it did not publish the Video;[126] and (2) admits that FLIR may plead contradictory alternative claims,[127] but nonetheless asserts that FLIR's aiding and assisting claim should be dismissed because FLIR has alleged that Sierra is a primary tortfeasor and it cannot "aid and assist" itself.  That contention is without merit for at least two reasons.

First, although Sierra's participation in the tortious conduct was so substantial that it may be held directly liable to FLIR, that fact alone does not prevent it from having aided and assisted its joint tortfeasor, Fluke.  In particular, under Oregon law, Sierra may be held liable for aiding and assisting Fluke's tortious conduct if it:  (1) committed a tortious act in concert with Fluke; or (2) gave substantial assistance to Fluke in accomplishing a tortious result and Sierra's own conduct constitutes a breach of duty to FLIR.[128]  FLIR alleges that Sierra:  (1) committed a tortious act in concert with Fluke—created and published the disparaging Video;[129] and (2) gave substantial assistance to Fluke while its own conduct constituted a breach of duty to FLIR—

---

[126] *See* Defendant Sierra Media, Inc.'s Memorandum in Support of Motion to Dismiss Counts Two, Three, Four and Five of the first Amended Complaint for Failure to State a Claim ("Def. Memo") at 4 (Dkt. No. 41).

[127] *See id.* at 15.

[128] *See Granewich*, 985 P.2d at 792-93 (Or. 1999).

[129] *See* Complaint at p. 1; *id.*  ¶¶ 10, 12, 16-17, 31-39, 40, 42, 60, 61, 66-67, 70, 76-77, 85-86, 91-93.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

commercial disparagement and intentional interference with prospective economic relations.[130]

Accordingly, Sierra may be held liable either directly or because it aided and assisted Fluke.

Second, FLIR may plead alternative theories of liability.[131] Here, aiding and assisting as set forth above is consistent with pleading claims directly against Sierra. Moreover, it is an appropriate lesser included offense because, for example, Sierra apparently contends that it did not publish the Video, an element of commercial disparagement.[132] Even if Fluke's long-time media and marketing company did not publish the Video, a factual issue to be established in discovery, Sierra may be held liable because it knew Fluke's conduct was unlawful and nonetheless gave substantial assistance to Fluke.[133] Accordingly, FLIR has properly alleged a claim for aiding and assisting liability.

## V.

## CONCLUSION

For all the foregoing reasons, Sierra's Motion should be denied in its entirety.

---

[130] *See id.* ¶¶ 13-15, 23-24, 31-39, 63-64, 85, 87, 91-93.

[131] Sierra's reliance on *Total Coverage, Inc. v. Cendant Settlement Services Group, Inc.*, 252 F. Appx. 123, 126 (9th Cir. 2007) is misplaced for at least two reasons: (1) in that case there was "no dispute about the existence or validity of the express contract," and, therefore, plaintiff could not plead the alternative quasi-contract theories of quantum meruit, unjust enrichment, and promissory estoppel, whereas here, Sierra denies that it published the Video, thus instilling doubt into the factual background of FLIR's claims; (2) and the allegations here are not inconsistent because aiding and assisting is not a separate theory of recovery, but instead is one way in which a person may become jointly liable for another's tortious conduct. *See id.*; *Granewich*, 985 P.2d at 792.

[132] *See* Defendant Sierra Media, Inc.'s Memorandum in Support of Motion to Dismiss Counts Two, Three, Four and Five of the first Amended Complaint for Failure to State a Claim ("Def. Memo") (Dkt. No. 41) at 4 .

[133] *See Granewich*, 985 P.2d at 792 ("[O]ne is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.").

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

SCHWABE, WILLIAMSON & WYATT, P.C.

By:  <u>/s/ Devon Zastrow Newman</u>
     Devon Zastrow Newman, OSB #014627
     Telephone (503) 222-9981

     BICKEL & BREWER
     Michael J. Collins, *appearing Pro Hac Vice*
     C. Dunham Biles, *appearing Pro Hac Vice*
     Telephone (214) 653-4000
     Attorneys for Plaintiff, FLIR Systems, Inc.

**PLAINTIFF FLIR SYSTEMS, INC.'S**
**RESPONSE IN OPPOSITION TO DEFENDANT**
**SIERRA MEDIA INC.'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

**Page 29**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

5235611.36
2069-08