**BENJAMIN N. SOUEDE**, OSB. No. 081775
benjamin@angelilaw.com
**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
Angeli Law Group LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

Attorneys for Defendant Sierra Media, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FLIR Systems, Inc., an Oregon corporation, | Case No.: 3:10-cv-00971 HU |
| Plaintiff, | **DEFENDANT SIERRA MEDIA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| Fluke Corporation and Sierra Media, Inc., | |
| Defendants. | **(ORAL ARGUMENT REQUESTED)** |

## I.  INTRODUCTION

In its Amended Response to Sierra Media, Inc.'s ("Sierra Media") Motion to Dismiss the First Amended Complaint ("FAC"), plaintiff FLIR Systems, Inc. ("FLIR") puts forth arguments in its Response that underscore the FAC's deficiencies. The Response varyingly mischaracterizes the allegations contained in the FAC, mischaracterizes the meaning of those allegations, and draws the wrong legal conclusions with respect to those allegations. For all the argument contained in its Amended Response, FLIR cannot avoid the consequences of its

insufficient pleadings: the FAC's Second, Third, Fourth and Fifth Claims for Relief should be dismissed.

## II. DISCUSSION

### A. Count Five of the FAC is Not Pleaded as an Alternative Claim, and is Insufficient to Maintain a Claim Against Sierra Media for Aiding and Abetting

Count Five of the FAC alleges that Sierra Media is liable for aiding and abetting defendant Fluke Corporation ("Fluke") in Fluke's commission of the torts of trade libel/commercial disparagement and intentional interference with prospective economic relations against FLIR. Count Five relies on the same set of facts used to allege Sierra Media's direct liability for those torts in Counts Two and Three of the FAC.

FLIR argues in its Amended Response that Claim Five is sufficiently pleaded because Plaintiff is entitled to plead alternative facts (presumably pursuant to Federal Rule of Civil Procedure 8(d)). (Amended Response at 26-27). However, FLIR cannot save its Fifth Claim for Relief by claiming that it is based on an "alternative theory of liability," because it has not pleaded sufficient facts to support such an alternative theory.

While a party may allege inconsistent claims pursuant to Fed. R. Civ. P. 8(d)(3), each of those claims is subject to the federal pleading standards. To survive a motion to dismiss, each alternative claim must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 550 U.S. 522 (2007).

The problem with FLIR's "alternative claims" argument is that Claim Five presents no "alternative" set of facts. To the contrary: the first paragraph of Claim Five "incorporates by reference" all of the FAC's preceding paragraphs. (FAC ¶ 89). This includes, of course, all of those paragraphs where the FAC alleges that Fluke and Sierra Media both published the Video (which is the triggering event for <u>all</u> of plaintiff's tort claims). (E.g., FAC ¶¶ 16, 17, 40, 86). Thus, FLIR alleges in Claim Five that Sierra Media published the Video, while purporting to

PAGE 2 –   DEFENDANT SIERRA MEDIA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

state a claim that Sierra Media aided and abetted Fluke's publishing of the Video. This is plainly insufficient to render the claim "plausible" on its face.

There is more (or indeed, less): the FAC is devoid of any allegation that only Fluke published the Video, and that Sierra Media merely helped Fluke so do. As noted in Sierra Media's Memorandum, there are multiple allegations that both "Defendants" published the Video. (E.g., FAC ¶¶ 16, 17, 40, 86). And several paragraphs state a variation of Count Five's allegation that "Sierra was retained and paid by Fluke to assist in the design, creation, and publishing of the false Video." (FAC ¶ 91; *see also* ¶ 10). But there is not a single factual allegation in the FAC (much less an allegation that is sufficient under the federal pleading rules) that Fluke published the Video, and that Sierra Media offered sufficient assistance in the publication so as to make it secondarily liable for the alleged resulting torts.

In short, the FAC alleges (consistently and uniformly) that Sierra Media published (or co-published) the Video. While FLIR might conceivably state a claim inconsistent with those allegations (such as a claim that Fluke published the Video, and was aided and abetted in doing so by Sierra Media), such an inconsistent claim can survive a motion to dismiss only if Fluke also alleges facts that render such a claim plausible. The FAC fails to do so. The Fifth Claim for Relief purports to state a claim that is inconsistent with the factual allegations contained throughout the FAC; it is therefore not plausible on its face, and must be dismissed.

**B. Count Four Does Not Sufficiently Allege a Conspiracy Between Sierra Media and Fluke**

Count Four of the FAC alleges that Sierra Media and Fluke conspired to commit the torts of trade libel/commercial disparagement and intentional interference with prospective economic relations against FLIR. (FAC ¶ 84).

To establish a civil conspiracy, a party must plead and prove: "(1) Two or more persons * * *; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of

(4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Osborne v. Fadden*, 201 P.3d 278, 282 (Or. Ct. App. 2009) (internal quotations omitted). As argued in Sierra Media's Memorandum, the FAC fails to sufficiently allege that Sierra Media and Fluke had a "meeting of the minds" as to any tortious object to be accomplished against FLIR.

In its Amended Response, FLIR lays out its argument that the FAC sufficiently pleads that Fluke and Sierra Media enjoyed the requisite "meeting of the minds." (Response at 19-21). FLIR points to numerous instances where the FAC alleges that Sierra Media, as "Fluke's media and marketing company for fifteen years" and as part of a "team" with Fluke, merely served as a Fluke functionary, and promptly executed directives and requests from Fluke regarding, inter alia, the contents and editing of the Video, the signing of the Methodology, etc. (*Id.*). FLIR concludes that the allegations of these facts mean that the FAC has alleged:

> (1) Fluke asked, and Sierra agreed, to include representations in the Video it knew were false; (2) Fluke asked, and Sierra agreed, to sign off on a methodology that was printed on Sierra's letterhead, which Sierra knew was false; (3) Fluke asked, and Sierra agreed, to delete the results from the Video and methodology for each of the FLIR Cameras despite its knowledge that such actions would reinforce the Video's false statements;(4) Fluke asked, and Sierra agreed, to edit the Video in order to reinforce the false and disparaging representations; (5) Fluke asked, and Sierra agreed, to publish the Video despite its knowledge that it included false representations; and (6) <u>Sierra was compensated for following Fluke's instructions</u>
> .

(Amended Response at 21-22) (emphasis added).

Unfortunately for FLIR, this lengthy recitation in its Response only brings into sharper relief why the FAC has failed to sufficiently allege a conspiracy. The FAC's averments do not allege a "meeting of the minds" between co-conspirators; they allege very clearly the existence of a principal-agent relationship between Fluke and Sierra Media.[1]

---

[1] Under Oregon law, to be an "agent," one must: (1) be subject to another's control; and (2) must act 'on behalf of' the principal. *Vaughn v. First Transit, Inc.*, 346 Or. 128, 136, 206 P.3d 181, 187 (2009). It has long been the law in Oregon that a corporation may act as the agent of

PAGE 4 –   DEFENDANT SIERRA MEDIA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

The FAC similarly and consistently pleads "Sierra's lack of independence" (FAC ¶ 30), the fact that the test was not "independently run" (FAC at 1) and that "the methodology * * * falsely states that Sierra was an 'independent, third party.'" (FAC ¶ 13).[2] Under the FAC's formulation, Sierra Media was simply a Fluke apparatchik that did what it was told by its "longtime" employer. Sierra Media did not possess a "mind" with which Fluke <u>could</u> meet – Sierra Media was merely a functionary that performed individual tasks as assigned to it by its "longtime" employer Fluke. The proper legal conclusion to be drawn from such allegations (if they are taken as true) under Oregon law is that Sierra Media was the paid agent of Fluke.[3] Indeed, in its Amended Response, FLIR states directly the inescapable legal conclusion created by the FAC's allegations, describing Sierra Media as "the long-time media and marketing agent for FLIR's competitor [Fluke]." (Amended Response at 15-16). The problem for the purposes of FAC's Count Four is that having consistently pleaded that Sierra Media was Fluke's agent, the FAC cannot state a claim that Sierra Media and Fluke engaged in an unlawful conspiracy.

Courts have consistently held, in a variety of contexts, that it is "fundamental that an agent cannot conspire with his principal." *Las Vegas Sun, Inc. v. Summa Corp.*, 610 F.2d 614, 618 (9th Cir. 1979) (quoting *Harvey v. Fearless Farris Wholesale, Inc.*, 589 F.2d 451, 457 (9th Cir. 1979)). *See also, e.g., Wolf v. Fauquier County Bd. of Sup'rs*, 2006 WL 2987951 (E.D. Va. Oct. 17, 2006) ("A corporate entity, which acts only through its agents, cannot conspire with itself, so a conspiracy cannot exist if Defendants were agents of the same principle acting within the scope of agency."); *Astarte, Inc. v. Pac. Indus. Sys., Inc.*, 865 F. Supp. 693, 708 (D. Colo. 1994) ("An attorney, being an agent of his principal, cannot be held liable for conspiracy with his

---

another. "It is clear, then, that a corporation may act as the agent of another." *Killingsworth v. Portland Trust Co.*, 18 Or. 371 (1890).

[2] Sierra Media does not concede that any of these (or any other) assertions in the FAC are accurate.

[3] That is, the FAC alleges that Sierra Media was "subject to" Fluke's control, and acted "on behalf of" Fluke. *Vaughan*, 346 Or 136, 206 P.3d 187.

PAGE 5 –   DEFENDANT SIERRA MEDIA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

principal where the agent acts within the scope of his authority and do not rise to the level of active participation in a fraud.").[4]

Such a rule is especially prudent in the present context. The FAC alleges that Sierra Media and FLIR had a "meeting of the minds" on a series of small-scale, functional tasks (such as, for example, printing the methodology on Sierra Media letterhead [FAC ¶ 13]). This kind of agreement between a customer and a vendor as to how the vendor will complete its assigned tasks is grossly insufficient to establish a "conspiracy" under Oregon law. Indeed, in all but the rarest cases, the vendor does not know (and does not care) what is the customer's "big picture" goal for a particular product or service provided by the vendor. As alleged in the FAC, the customer (Fluke) tells the vendor (Sierra Media) what it wants, and the vendor provides that service or product as ordered. Even if the vendor knows or thinks it knows what the customer intends to do with a provided product or service, that in itself is not enough to demonstrate a "meeting of the minds" sufficient to maintain a claim for conspiracy. Absent particular facts that are not present or alleged in the FAC, the "meeting of the minds" between a vendor and a customer is on the nature of the product or service delivered, not what the customer plans to accomplish with that product or service.

Here, as laid out in great detail in FLIR's response, the FAC alleges a variety of tasks assigned by Fluke to Sierra Media, and alleges that Sierra Media agreed to accomplish those tasks. Such allegations are a far cry from a sufficient factual pleading that render it "plausible" that Sierra Media had a "meeting of the minds" with its customer Fluke to inflict the torts

---

[4] *See also, e.g., Global Media Group, Inc. v. Express Tax Serv., Inc.*, 4:05 CV 956 DDN, 2005 WL 2452542 (E.D. Mo. Oct. 4, 2005); *Staples v. Merck & Co., Inc.*, 270 F. Supp. 2d 833, 845 (N.D. Tex. 2003) ("If there is an agency relationship between Merck and the Clinical Researchers, as Plaintiffs allege, then there can be no conspiracy between them, as an agent cannot conspire with its principal."); *Michigan Mut. Ins. Co. v. Smoot,* 128 F. Supp. 2d 917, 925 (E.D. Va. 2000); *Balabanos v. N. Am. Inv. Group, Ltd.*, 708 F. Supp. 1488, 1495 (N.D. Ill. 1988); *Tobman v. Cottage Woodcraft Shop*, 194 F. Supp. 83, 87 (S.D. Cal. 1961) ("[A] principal cannot conspire with his agent.").

PAGE 6 –   DEFENDANT SIERRA MEDIA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

pleaded in the FAC upon FLIR. Such a "meeting" is far outside what would be plausibly within Sierra Media's field of interest, and the FAC pleads no facts to bring such a scenario into the realm of the plausible.

### C. Count Three Fails to Allege the Essential Elements of a Claim for Intentional Interference with Prospective Economic Relations Under Oregon Law

To state a claim for intentional interference with prospective economic relations under Oregon law, a plaintiff must sufficiently allege, inter alia, the <u>intentional</u> interference with a professional or business relationship (which may include a prospective economic advantage). *See, e.g., Allen v. Hall,* 328 Or 276, 281, 974 P.2d 199 (1999). The "intentional interference" requirement demands that the defendant's interference "must be a knowing and not an inadvertent or incidental invasion of plaintiff's * * * interests." *Wampler v.Palmerton,* 250 Or 65, 73, 439 P.2d 601 (1968). In the absence of actual knowledge, a defendant may be held liable for this tort only if the defendant knew that such interference was "substantially certain" to occur from its action. *See Aylett v. Universal Frozen Foods Co.,* 124 Or App 146, 152, 861 P.3d 375, 379 (1993) ("concerning the element of intentional interference, it is sufficient that there is proof that defendant knows that interference is substantially certain to occur from its action"). As explained in Sierra Media's Memorandum, Plaintiff's FAC fails to sufficiently allege that Sierra Media's claimed interference was "intentional" as defined by Oregon law.

In its Amended Response, FLIR presents an incorrect legal standard and an inaccurate factual description of the FAC's allegations.

First, citing non-Oregon cases, FLIR argues that Sierra Media may be held liable for this alleged tort "so long as [Sierra Media] knows that interference [was] likely to occur from [its] action and [was] a necessary consequence thereof." (Amended Response at 15 and n.77). As demonstrated decisively by the Oregon cases cited above and in Sierra Media's Memorandum, this statement is contrary to Oregon law. Under Oregon law, a defendant must have actual knowledge of the intentional interference, or must "know that interference is substantially

certain" to occur from its conduct. *Aylett*, 124 Or App at 152, 861 P.3d at 379. This the FAC fails to sufficiently allege.

Second, FLIR argues in its Amended Response that "[a]s the long-time media and marketing agent for FLIR's competitor, Sierra knew that every potential customer for thermal imaging cameras is a prospective customer for FLIR. In fact, Sierra knew that the obvious and natural consequence of its actions would be to interfere with FLIR's prospective economic relations as FLIR's competitor, Fluke knew that every potential customer for thermal imaging cameras is a prospective customer for FLIR." (Amended Response at 15-16). Vitally, <u>this allegation does not appear anywhere in the FAC</u>. Moreover, even if such an allegation did appear in the FAC, it is insufficient to state a claim under Oregon law, because it completely vitiates the "intentional" requirement of this tort. To maintain a claim, FLIR must allege sufficient facts that render it plausible that Sierra Media either knew its actions constituted interference, or that Sierra Media <u>knew</u> that "interference was substantially certain" to occur. A claim that Sierra Media knew that FLIR was a Fluke competitor, and thus might like to sell its products to the same people that Fluke would like to sell to, falls far short of stating factual allegations that make it plausible that Sierra Media intentionally interfered with FLIR's prospective economic relations.

**D. Count Two Fails To Sufficiently State a Claim for Trade Libel/Commercial Disparagement**

A plaintiff stating a claim for business disparagement must sufficiently allege that the defendant made a false factual assertion that was disparaging. *Reesman v. Highfill,* 965 P.2d 1030, 1034 (Or. 1998); *see Soloflex, Inc. v. NordicTrack, Inc.*, No. 93-545-JE, 1994 WL 568401, at *13 (D. Or. Feb. 11, 1994). The FAC fails to sufficiently allege either that Sierra Media made any false factual assertions about FLIR's products or that Sierra Media made any disparaging assertions about FLIR's products.

FLIR's contention that the "Defendants" published the Video, and that the Video is "false" is unavailing for several reasons. First, it is an allegation of "group conduct" by multiple defendants that is not sufficient to state a claim for relief against each (or any) individual defendant. *See, e.g., Anthony v. Harmon*, CIV 2:09-2272 WBSKJM, 2009 WL 4282027 (E.D. Cal. Nov. 25, 2009) ("A number of averments in plaintiffs' complaint certainly appear to have been made without *Iqbal* in mind. For example, plaintiffs' allegations repeatedly lump defendants together, referring to them as 'Advisors,' and do not plead facts that plausibly suggest that each defendant is liable for the claims in the Complaint.").

Second, FLIR does not allege that any portion of the Video is itself "false." FLIR does not allege that the FLIR cameras were altered or manipulated to break on impact as shown in the Video. FLIR also does not allege that the drops of the FLIR cameras depicted in the Video were not accurately recorded. In short, FLIR does not allege that <u>any</u> of the acts depicted in the Video occurred other than the ways they appear in the Video. FLIR relies on its argument that the Video "taken as a whole" is misleading, because it fails to contain information such as the number of drops undertaken for each camera shown. (Amended Response at 6-7). However, the Video never purported to depict of every drop of every camera. It is what it appears to be: a compilation or montage of drops that accurately depicts that some cameras (including the FLIR cameras) were dropped and broke, and that the Fluke camera was dropped and survived. FLIR does not and cannot plead otherwise; the FAC thus fails to sufficiently plead that the Video was false.

The FAC insufficiently pleads the "disparagement" prong as well. As a matter of law, the Video is incapable carry a defamatory meaning with respect to FLIR's products. As noted above, FLIR does not argue that anything in the Video is falsified. FLIR's argument, instead, is that each FLIR camera is shown dropping only once, and is shown breaking during that drop.[5]

---

[5] As persuasively demonstrated in Fluke's Reply In Support of Motion to Dismiss, which is incorporated by reference herein, this allegation by Plaintiff is demonstrably and obviously

This, FLIR argues, is misleading, and the viewer could therefore reasonably conclude that the FLIR cameras dropped on their first (and only) drop. But any reasonable viewer of the Video would view the "montage" of thermal imager drops (which shows multiple drops of the FLIR, Fluke and Testo imagers) as self-evidently including multiple drops of each camera. FLIR's feared implication that the FLIR cameras are each being shown breaking on their very first drop is both nonsensical (because each camera is shown dropping more than once, and shown not breaking) and unreasonable. More to the point, it is implausible, and Count Two therefore fails as a matter of law.

### III. CONCLUSION

For the reasons stated in Sierra Media's Motion to Dismiss, Memorandum in Support therefore, and in this Reply, FLIR's Second, Third, Fourth and Fifth Claims for Relief should be dismissed.

DATED this 14th day of March, 2011.

Respectfully submitted,

s/ Benjamin N. Souede
BENJAMIN SOUEDE, OSB No. 081775
DAVID ANGELI, OSB No. 020244
(503) 954-2232
Attorneys for Defendant Sierra Media, Inc.

---

untrue. (Fluke Reply at 5). Each FLIR camera is shown dropping multiple times, and for each camera, not every shown drop involves the FLIR camera breaking.

PAGE 10 –   DEFENDANT SIERRA MEDIA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT