**Devon Zastrow Newman,** OSB #014627
E-mail: dnewman@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, Oregon 97204
Telephone: (503) 796-2944
Facsimile: (503) 796-2900

-and-

**William A. Brewer III,** *pro hac vice pending*
Email: wab@bickelbrewer.com
**Michael J. Collins,** *appearing pro hac vice*
E-mail: mjc@bickelbrewer.com
**C. Dunham Biles,** *appearing pro hac vice*
E-mail: cdb@bickelbrewer.com
BICKEL & BREWER
4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas 75201-4612
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

ATTORNEYS FOR PLAINTIFF FLIR SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| FLIR SYSTEMS, INC., an Oregon corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>SIERRA MEDIA, INC. and FLUKE CORPORATION,<br><br>        Defendants. | Case No. 3:10-CV-971-HU<br><br>PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND |

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND
AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

Plaintiff FLIR Systems, Inc. ("FLIR") files this Second Amended Complaint and Jury Demand against defendants Sierra Media, Inc. ("Sierra") and Fluke Corporation ("Fluke") (together, "Defendants") upon personal knowledge as to its acts and upon information and belief as to all other matters, as follows:

## I.

## PRELIMINARY STATEMENT

FLIR is a world leader in the design, manufacturing, and marketing of thermal imaging cameras. Fluke is a competitor of FLIR which is unable to compete effectively against FLIR on the basis of price, quality, and service. Fluke, therefore, has resorted to disparaging FLIR to potential customers by making false claims regarding the durability of FLIR's cameras. For example, Fluke, with the assistance of Sierra, has produced and distributed an intentionally misleading video concerning the durability of FLIR's cameras relative to its own (the "Video"). The Video includes a "test" which purports to compare the durability and reliability of one Fluke thermal imaging camera – the Fluke Ti32 (the "Fluke Camera") – to three FLIR thermal imaging cameras – the FLIR I-7, the FLIR I-60, and the FLIR T-400 (the "FLIR Cameras"). Defendants claim to have tested the durability, quality, and reliability of those thermal imaging cameras by dropping them from a height of 2 meters onto a concrete floor (the "Test"). The Test shown in the Video, however, was arranged by Defendants to create the false impression that an independent test was run by Sierra to determine which of the thermal imaging cameras manufactured by FLIR, Fluke, and another manufacturer were the most durable. In fact, the Test was neither independently run nor fairly represented in the Video.

In addition, Fluke has previously threatened to sue, and has now sued, FLIR for trademark infringement based on its refusal to cease using certain generic or descriptive terms –

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

claimed to be trademarked by Fluke – when describing its own products. However, as FLIR advised Fluke more than two years ago: (1) Fluke's alleged trademark is not valid; and (2) FLIR has not misled consumers as to the origin of its products.

By this action, FLIR seeks to enjoin Defendants from continuing their wrongful conduct, invalidate and obtain a declaration of noninfringement of Fluke's alleged trademark, and obtain damages for Defendants' wrongful conduct.

## II.

## PARTIES

### A. Plaintiff

1. FLIR is a corporation organized under the laws of the State of Oregon with its principal place of business in Wilsonville, Oregon.

### B. Defendants

2. Sierra is incorporated in the State of Washington and has its principal place of business in Everett, Washington. Sierra may be served by and through its attorney of record, Benjamin Souede, Angeli Law Group, LLP, 1000 S.W. Broadway, Suite 1500, Portland, Oregon 97205.

3. Fluke is incorporated in the State of Washington and has its principal place of business in Everett, Washington. Fluke may be served by and through its attorney of record, Kenneth R. Davis II, Lane Powell PC, 601 S.W. Second Avenue, Suite 2100, Portland, Oregon 97204.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

# III.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367 because this action is based on federal statutory and related state law claims, the parties are citizens of different states, and the amount in controversy exceeds $75,000.

5.      The Court has general personal jurisdiction over Defendants because they each have substantial, continuous, and systematic contacts with the State of Oregon and have availed themselves of the privilege of conducting activities in the State of Oregon.  Indeed, Defendants engage in business nationwide, including in Oregon.  In addition, the Court has specific personal jurisdiction over Defendants because they each committed intentional torts in Oregon, the brunt of the resulting harm occurred in Oregon as FLIR is an Oregon corporation with its principal place of business located in Oregon, and Defendants' tortious conduct was expressly aimed at FLIR.  Fluke has also invoked the Court's jurisdiction by filing its counterclaims.

6.      Pursuant to 28 U.S.C. § 1391(b)(2), venue in this district is proper because, among other things, a substantial part of the events giving rise to this action occurred in this judicial district and at least one defendant may be found in this district.

# IV.

## FACTUAL BACKGROUND

### A.      FLIR And Its Business

7.      FLIR is a global leader in infrared cameras and thermography and thermal imaging equipment.  Its products are sold in a wide range of industrial, commercial, and government markets around the world.  As a pioneer in the commercial infrared camera industry,

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

FLIR has supplied thermography and night vision equipment to scientific laboratories, industrial buyers, law enforcement organizations, and the military for over thirty years.

**B.**  **Sierra And Its Business**

8.    Sierra is Fluke's long-time media and marketing company.  In fact, Sierra's relationship with Fluke spans over fifteen years, during which period Fluke has become one of Sierra's largest customers.  Sierra assisted Fluke in publishing the false and misleading advertisement and promotional campaign at issue – *i.e.*, the Video.

**C.**  **Fluke And Its Business**

9.    Fluke – a wholly-owned subsidiary of Danaher Corporation, a publicly traded company – is in the business of manufacturing, distributing, and servicing electronic test tools and software.  In addition, Fluke manufactures and distributes thermal imaging cameras that compete with certain FLIR thermal imaging cameras in interstate commerce.

**D.**  **Defendants Conspire To Disparage FLIR And Its Products.**

10.    Unable to compete effectively with FLIR on the basis of price, quality, and service, Fluke decided that it would mislead potential customers into choosing its products on the basis of a false claim of superior durability (as compared to FLIR's products).  Therefore, in September 2009, Fluke turned to Sierra for assistance in contriving a commercial advertising campaign that falsely purports to "compare" thermal imaging cameras manufactured by Fluke to thermal imaging cameras manufactured by FLIR – *i.e.*, the Test.  That false advertising campaign is embodied in the Video.

11.    Specifically, the Test, as depicted in the Video, purports to compare the durability and reliability of the Fluke Camera to the FLIR Cameras.  Defendants claim to have tested the durability, quality, and reliability of those thermal imaging cameras by dropping them from a

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

height of 2 meters onto a concrete floor.  The Test purports to show that the FLIR Cameras break apart upon initial impact, whereas the Fluke Camera remains intact and operable.

12.     In the Video, Fluke and Sierra represent to potential FLIR and Fluke customers that the Test was independently designed, filmed, and conducted by Sierra.  However, Sierra knew that such representation was false – Fluke controlled the design of the Test and participated in the editing of the Video.  Nevertheless, Sierra not only allowed Fluke to create and revise, on Sierra's letterhead, the methodology which falsely states that Sierra was an "independent, third party," but Daniel Cardenas ("Cardenas"), Sierra's founder, was aware of those facts when he signed the methodology document and permitted it to be published with the Video.

13.     In a revealing e-mail dated January 21, 2010, Cardenas referred to Sierra and Fluke employees that participated in the creation of the Video as a "team" and referred to Fluke's cameras as "our products."  This "team mindset" was further evidenced when Sierra, at the direction of Fluke, signed off on the misleading and substantially edited methodology that was released to the public to counter concerns that the Video did not appear to be legitimate.

14.     Moreover, Sierra knew that the "results" of the Test shown in the Video are misleading.  In particular, Fluke's senior manager and technical advisor for the Video "shoot" informed Sierra that in regard to the Fluke Camera:  "I know for a fact that the parallax alignment between the visible and IR camera was completely hosed . . . and I never check[ed] the temperature measurement accuracy."  Incredibly, Defendants fail to divulge that information in the Video.  Instead, Defendants represent that the Fluke Camera survived "17 drops . . . and counting," and was, therefore, "the ONLY rugged thermal imager."  Further, Sierra revised the Video and the methodology to remove the alleged results for the FLIR Cameras so as not to divulge that what is seen in the Video – FLIR Cameras purportedly breaking in dramatic fashion

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

the first time they are dropped – is not what actually happened. The Video is, therefore, false because it does not divulge that the FLIR Cameras actually withstood multiple drops – *i.e.,* they did not break on the first drop.

15.     Thus, through their Video, Defendants intentionally create the false impression that the Fluke Camera is more durable, reliable, and of higher quality than the FLIR Cameras.

16.     After months of extensive selective editing by Fluke, in approximately March 2010, Defendants published the Video and embarked upon their campaign to disparage FLIR and its products by depicting them in a false light. The Video aired on YouTube, Facebook, and Twitter, and was made available to download and view on Fluke's website.

17.     Further, in order to ensure widespread distribution of this disparaging advertisement, Defendants published a version of the Video on YouTube that allowed viewers to "embed" the Video in any independent user's external website. Fluke's intent was for the Video to go viral.

**E.     The Video Is Deliberately False And Misleading.**

18.     The Video includes two broad categories of materially false and misleading representations. First, the Test shown in the Video was neither conducted by an independent third-party nor conducted independently by Sierra. Second, the Video falsely represents, and creates the false impression, that when the thermal imaging cameras were dropped onto a concrete floor, the FLIR Cameras broke apart and became inoperable upon initial impact, whereas the Fluke Camera remained intact and operable. In fact, the FLIR Cameras did not break the first time they were dropped. Moreover, the Fluke Camera did not survive every drop as represented in Defendants' Video.

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

**1.** **The Test was neither conducted by an independent third-party nor conducted by Sierra independently of Fluke.**

19.     In the Video, Defendants represent that "an independent 3rd party performed and filmed this drop test." That representation is false for two reasons.

20.     First, Sierra is not an independent third-party. Instead, Sierra is Fluke's longtime advertising company which Fluke knew lacked the experience and expertise to test thermal imaging cameras on its own.

21.     In fact, the relationship between Fluke and Sierra was so well-established that from the beginning of the project Fluke worried that consumers viewing the Video "might notice" Sierra's presence: "We need to decide if we use Dan's voice [the voice of Sierra's founder] or get voice over. Also model to drop it. I'm thinking we need to do both of those. Too much of the Fluke stuff has Dan's voice on it and someone might notice."

22.     To remedy that problem, Fluke had Sierra sign off on a misleading and substantially edited published version of the methodology that falsely proclaims: "Sierra Media was contracted under Fluke Corporation to perform and film an independent, third party drop test." Sierra knew that the representations were false and misleading but, nevertheless, lent its name and perceived credibility to the Video and the published methodology, thereby providing substantial assistance to Fluke and its wrongful actions.

23.     Adding the purported appearance of independent third-party validation was critical to Fluke's mission to disparage FLIR and mislead potential customers. In fact, internal e-mails reveal that Fluke was concerned that the audience might discount the Video as being staged or produced by Fluke – which it was. To avoid that result, Fluke represented in the published methodology that an "independent third party" filmed and conducted the Test, printed that methodology on Sierra's letterhead, and had it signed by Sierra's founder. The published

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981 Fax 503.796.2900

version of the methodology was created for the express purpose of deceiving potential FLIR and Fluke customers.

24.     In fact, Fluke never intended the Video to be an independent third-party test. Instead, as stated by Fluke's marketing communications manager in an e-mail dated September 24, 2009, the "Intent is to create the atmosphere of an independent testing lab" and ". . . to load these Videos to YouTube so it looks like its coming from a user or other independent source."  Clearly, Fluke's intent was to create the false impression that an "independent third-party" designed, filmed, and conducted the Test.

25.     <u>Second</u>, Sierra did not independently conduct the Test and create the Video.  To the contrary, it was a team effort – a team captained by Fluke.

26.     Indeed, from the beginning of the project, Fluke expressed its desire to "control more of what the content [of the Video] is."  Fluke was actively involved in the design and conducting of the Test.  In fact, on the day that Sierra filmed the Test, a Fluke employee was present and directed Sierra on how to drop and operate the cameras.

27.     Fluke's role was so substantial that even Fluke became concerned that it was doing all the work.  For example, a Fluke employee stated in an e-mail that she was "confused on why we seem to be doing so much of the work associated with this Video."  By December 2009, Fluke seized control over the project and provided Sierra with a Video strategy document that, according to Fluke, "captured the essence of what we are looking for in our video projects."  By mid-December 2009, Fluke had already changed the scope of the Video three times.

28.     As Fluke employees recognized in internal e-mails from December 15, 2009, the purpose of Fluke's substantial involvement was "to ensure that we get the outcome we want."

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

29.     Sierra's lack of independence and the true nature of the relationship between Sierra and Fluke – partners – is further revealed in an e-mail from Cardenas to Fluke dated January 21, 2010, in which he states: "Hey team!  Yesterday's shoot was a success in my eyes. We were able to destroy the 4 competitors imagers . . . ."  Those are not the words of a third-party independent testing facility.

30.     Fluke continued to assert control over the project even after the filming was concluded.  Specifically, each time Sierra created a new version of the Video, it was e-mailed to Fluke for review and substantive comments.  Fluke repeatedly requested that Sierra make substantial edits – revisions that were intended to reinforce Fluke's false and disparaging representations – and Sierra always complied with Fluke's requests.  After seven different versions, the final version of the Video was completed and published.

**2.     Defendants edited the Video to intentionally misrepresent the results of the Test.**

31.     Through their contrived editing of the Video, Defendants intentionally made two false representations.

32.     <u>First</u>, the Video falsely represents, and creates the false impression, that the FLIR Cameras broke apart upon initial impact when dropped from a height of 2 meters onto a concrete floor.

33.     The FLIR Cameras did not, however, break upon initial impact – they withstood multiple drops.

34.     In order to convey their false message, Defendants intentionally made several substantial revisions to the Video and the methodology they chose to disclose.  In particular, Defendants revised the Video to remove the results for each of the FLIR Cameras.  Early versions of the Video included the alleged results of the Test:  "FLIR T400 12 drops, FLIR i60

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND
          AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

12 drops, FLIR i7 11 drops, Testo 880 3 drops." Those purported results, however, reveal that the FLIR Cameras are rugged. Defendants, therefore, deleted those results from the Video.

35. In addition, earlier versions of the methodology disclosed to viewers the alleged results from the Test for each camera. Again, unwilling to allow the facts to stand in the way of their message, Defendants deleted this information from the final advertisement.

36. Moreover, certain versions of the methodology prior to its release to viewers provided that the "Imagers were dropped repeatedly until significant exterior damage occurred." (Emphasis added.) That proviso, however, was deleted by Defendants before the Video and its methodology were published because it would have undermined the false message of the Video – that the FLIR Cameras broke on the first drop.

37. Finally, on some postings of the Video, the methodology was not even included. For example, versions posted to YouTube on May 7, 2010, and July 30, 2010, did not feature a link to the methodology.

38. Second, in the Video, Fluke does not just disparage the FLIR Cameras, but also falsely represents the ruggedness of the Fluke Camera by claiming: "Fluke Ti32 – 17 drops and counting . . . The ONLY rugged thermal imager. Why waste money on tools that break?" In other words, Fluke claims that its camera did not break. That representation is false. In fact, in an e-mail dated January 21, 2010, a Fluke employee informed Sierra that the Fluke Camera sustained substantial internal damage: "the parallax alignment between the visible and IR camera was completely hosed." Sierra, however, did not correct the Video and instead continued to aid and assist its partner Fluke. For example, Sierra edited the Video and the published methodology according to the instructions and comments from Fluke.

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

## F.    **The Damage Is Done.**

39.    In the end, Defendants intentionally created and published the deliberately false Video for the purpose of deceiving potential consumers of such products and causing injury to FLIR.  Unfortunately, the Video has had its intended effect.  For example, in August 2010, FLIR lost a sale to a Fortune 100 company as a direct result of the Video.  Specifically, an employee at this Fortune 100 company was required by his superior to purchase the Fluke Camera rather than one of the FLIR Cameras because, after watching the Video, the employee's boss stated that FLIR's cameras are "way too sensitive if they get dropped."  In addition, three other potential customers – two building inspection companies and a heating and air conditioning company – have informed FLIR that because of the Video, they purchased, or seriously considered purchasing, a Fluke Camera rather than a FLIR Camera:  "the 'Drop Test' has got me sold on Fluke unless you can convince me otherwise;" and "[w]e did meet with Robert Levy of Fluke (RJM Sales) last night.  We looked at the TIR unit, and were impressed by its ruggedness and large screen.  He showed us a video of drop tests of the FLIR and Fluke products, where the Fluke bounced and the FLIR's broke . . . very impressive."

40.    Moreover, at a trade show on October 6 and 7, 2010, Fluke displayed the Video, which then prompted potential FLIR customers to directly question the durability of FLIR's cameras to FLIR representatives.  Given the widespread distribution of the Video, it is difficult, if not impossible, to determine the identity of each potential customer that FLIR has lost because of the false Video.  Regardless, what is clear is that the false and misleading Video was intended to influence, has influenced, and is likely to continue to influence potential FLIR customers.  Indeed, FLIR has lost at least two sales, and has likely lost many other sales, as a result of Defendants' false and misleading Video.  Moreover, as a result of those lost sales, Fluke gained

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

sales. After all, that is why Fluke continues to publish the Video despite its false and misleading representations.

41. FLIR is likely to suffer, has suffered, and continues to suffer irreparable harm based on Defendants' wrongful conduct. In fact, Defendants' deliberately false and misleading Video remains available for viewing on YouTube and Fluke's website, and is still being shown at trade shows. This false and misleading advertisement was intended to influence, has influenced, and is likely to continue to influence potential customers of FLIR products by creating false impressions concerning the quality, reliability, and durability of FLIR's products, including the false impression that the FLIR Cameras are not as durable or reliable as the Fluke Camera. Indeed, the use of the Video at trade shows prompted potential FLIR customers to directly question the durability of the FLIR Cameras to FLIR representatives. Moreover, as a result of Defendants' misconduct, FLIR has had, and will continue, to undertake corrective advertising efforts to combat the false impressions created by the Video.

## G.   Adding Insult To Injury:   Fluke Falsely Accuses FLIR Of Infringing Fluke's Alleged Trademark.

42. When FLIR became aware of the Video, representatives of FLIR contacted Sierra to learn more about the testing that was conducted. A representative of Sierra disclosed that Fluke had managed the production of the Video and that all questions should be directed to Fluke. This representation conflicts with the statements made in the Video that Fluke contracted with Sierra to "perform and film an independent, third-party drop test . . . ."

43. After FLIR's communications with Sierra, by letter dated August 5, 2010, Fluke falsely accused FLIR of infringing its alleged trademark – IR FUSION (the "Alleged Trademark"). Among other things, Fluke demanded that FLIR immediately cease using the terms IR Fusion, FLIR Fusion, FLIR's Fusion, FLIR's Fusion Technology, Fusion Technology

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

by FLIR, FLIR's Thermal Fusion, Fusion by FLIR, and all similar terms or phrases and threatened to assert claims against FLIR for trademark infringement and unfair competition.

44.     Those allegations are without merit.  Indeed, when Fluke originally raised them more than two years ago, FLIR notified Fluke that:  (1) the Alleged Trademark is not valid; (2) FLIR had not made use of "IR Fusion" in a trademark sense, but has instead used the term only in its generic or descriptive sense to aptly describe its own products; and (3) it would continue to promote its fusion functionality.  During the intervening period, Fluke did not file suit or otherwise complain.

45.     Fluke's demand was premised on a handful of allegedly infringing materials, only two of which Fluke even contended FLIR published.  Those materials, however, demonstrate that:  (1) confusion in the market between FLIR's and Fluke's products is not likely; (2) "IR Fusion" and "Fusion" have been used to aptly describe FLIR's own products and technology, which allow users to see infrared images and visible light images fused together – in other words, use of "IR Fusion" by FLIR is not likely to confuse consumers and, in fact, constitutes "classic fair use;" and (3) the term "IR Fusion" is merely generic or descriptive and has not acquired secondary meaning.  Indeed, the term "fusion" has been used generically for many years by the thermal imaging camera industry to describe the fusing together of infrared and visible light images.

46.     Further, Fluke's false accusations concerning trademark infringement threaten to impede FLIR's ability to promote its products.  Accordingly, FLIR seeks permanent injunctive relief to prevent Defendants from continuing to publish the Video, as well as actual, compensatory, and consequential damages, disgorgement of Defendants' profits, attorneys' fees, and declaratory relief that:  (1) the Alleged Trademark is invalid and ordering it cancelled; (2)

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981 Fax 503.796.2900

FLIR has not infringed the Alleged Trademark; and (3) any claims Fluke may have had or may ever have based on FLIR's purported infringement of the Alleged Trademark are barred by acquiescence, waiver, estoppel, and laches.

## V.

## CAUSES OF ACTION

**A.     Count One:  False Advertising Under Lanham Act – 15 U.S.C. § 1125(a)(1)(B)**

47.     The preceding paragraphs are incorporated herein by reference.

48.     In their commercial advertising and promotion – *i.e.*, the Video – Defendants have knowingly, intentionally, deliberately, and in bad faith materially misrepresented in interstate commerce the nature, characteristics, and qualities of FLIR's thermal imaging products, in violation of 15 U.S.C. § 1125(a)(1)(B), by distributing the Video, which falsely represents and implies that, when dropped from a height of 2 meters onto a concrete floor, the FLIR Cameras broke apart upon initial impact, whereas the Fluke Camera remained intact and operable after every drop.  The FLIR Cameras did not, as shown in the actual results, break upon initial impact.  In order to make that false representation and convey that false impression, however, Defendants intentionally engaged in selective editing of the Video and the methodology they chose to disclose.

49.     The false representations made by Defendants in the Video are material because representations concerning the durability of FLIR's and Fluke's cameras are likely to influence consumers' purchasing decisions, as evidenced by various customers questioning the durability of FLIR's cameras after watching the Video.  Indeed, those false representations were intended to deceive, have deceived, and are likely to continue to deceive consumers of FLIR's products and to thereby influence their decision to buy FLIR products.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

50.     Defendants also have knowingly, intentionally, deliberately, and in bad faith materially misrepresented that "an independent 3rd party performed and filmed this drop test," as evidenced by Fluke's desire "to load these Videos to YouTube so it looks like its [sic] coming from a user or other independent source."

51.     As a direct and proximate result of Defendants' false advertising, FLIR has suffered injury, as evidenced by the employee of a Fortune 100 company who originally wanted to purchase one of the FLIR Cameras, but was overruled by his superior who, instead, purchased the Fluke Camera because of the false representations regarding the durability of the FLIR Cameras. Three other potential FLIR customers have informed FLIR that because of the Video, they purchased, or seriously considered purchasing, a Fluke camera rather than a FLIR camera. Additionally, potential FLIR customers questioned the durability of FLIR's cameras to FLIR representatives at a recent trade show where the Video was shown. Accordingly, pursuant to 15 U.S.C. § 1117(a), FLIR seeks to recover actual, compensatory, and consequential damages in an amount to be determined at trial, including, but not limited to, reimbursement for the corrective advertising efforts that FLIR has undertaken and will undertake to address Defendants' wrongful conduct.

52.     In addition, pursuant to 15 U.S.C. § 1117(a), FLIR is entitled to the disgorgement of Defendants' profits.

53.     FLIR also requests permanent injunctive relief as authorized by 15 U.S.C. § 1116(a), as well as by state common law and principles of equity. Defendants injected the materially false advertisement into interstate commerce with the intent to mislead, confuse, and deceive potential customers of FLIR and its products. Accordingly, the Video threatens, and is

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

likely, to injure FLIR.  In fact, the Video continues to be published on YouTube and on Fluke's website.

54.     Defendants' actions are causing FLIR to suffer immediate and irreparable harm. Specifically, Defendants' actions are damaging FLIR's reputation and goodwill for which there is no adequate remedy at law, as evidenced by customer concerns regarding the durability of FLIR's cameras after watching the Video.

55.     Unless Defendants are enjoined from continuing their wrongful actions, FLIR will continue to suffer irreparable injury, harm, and damages.  FLIR, therefore, requests that the Court enter a permanent injunction enjoining Defendants from publishing the Video.

56.     As a result of Defendants' willful, deliberate, egregious, and bad faith violations of the Lanham Act, FLIR has been required to retain the undersigned counsel to prosecute the claims asserted herein.  Pursuant to 15 U.S.C. § 1117(a), FLIR seeks to recover from Defendants its attorneys' fees and costs incurred in this action.

**B.     Count Two:  Unfair Competition Under Oregon Common Law**

57.     The preceding paragraphs are incorporated herein by reference.

58.     In their commercial advertising and promotion – *i.e.*, the Video – Defendants have knowingly, intentionally, deliberately, and in bad faith materially misrepresented the nature, characteristics, and qualities of FLIR's thermal imaging products by making and distributing the Video which falsely represents and implies that, when dropped from a height of 2 meters onto a concrete floor, the FLIR Cameras broke apart upon initial impact, whereas the Fluke Camera remained intact and operable after every drop.  The FLIR Cameras did not, as shown in the actual results, break upon initial impact.  In order to make that false representation

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

and convey that false impression, however, Defendants intentionally engaged in selective editing of the Video and the methodology they chose to disclose.

59.     The false representations made by Defendants in the Video are material because representations concerning the durability of FLIR's and Fluke's cameras are likely to influence consumers' purchasing decisions, as evidenced by various customers questioning the durability of FLIR's cameras after watching the Video. Indeed, those false representations were intended to deceive, have deceived, and are likely to continue to deceive consumers of FLIR's products and to thereby influence their decision to buy FLIR products.

60.     Defendants also have knowingly, intentionally, deliberately, and in bad faith materially misrepresented that "an independent 3rd party performed and filmed this drop test," as evidenced by Fluke's desire "to load these Videos to YouTube so it looks like its [sic] coming from a user or other independent source."

61.     Defendants knew that the statements, representations, and depictions of the FLIR Cameras in the Video were false, or made them with reckless disregard for their truth or falsity. Defendants did so with the malicious intention of misleading potential customers of FLIR to purchase Fluke's cameras instead of FLIR's cameras.

62.     As a direct and proximate result of Defendants' tortious actions, FLIR has suffered injury as evidenced by the employee of a Fortune 100 company who originally wanted to purchase one of the FLIR Cameras, but was overruled by his superior who, instead, purchased the Fluke Camera because of the false representations regarding the durability of the FLIR Cameras. Three other potential FLIR customers have informed FLIR that because of the Video, they purchased, or seriously considered purchasing, a Fluke camera rather than a FLIR camera. Additionally, potential FLIR customers questioned the durability of FLIR's cameras to FLIR

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

representatives at a recent trade show where the Video was shown.  Accordingly, FLIR seeks to recover actual, compensatory, consequential, and punitive damages in an amount to be determined at trial, including, but not limited to, reimbursement for the corrective advertising efforts that FLIR has undertaken and will undertake to address Defendants' wrongful conduct.

63.     In addition, FLIR is entitled to the disgorgement of Defendants' profits.

64.     FLIR also requests permanent injunctive relief.  Defendants published the materially false advertisement with the intent to mislead, confuse, and deceive potential customers of FLIR and its products.  Accordingly, the Video threatens, and is likely, to injure FLIR.  In fact, the Video continues to be published on YouTube and on Fluke's website.

65.     Defendants' actions are causing FLIR to suffer immediate and irreparable harm.  Specifically, Defendants' actions are damaging FLIR's reputation and goodwill for which there is no adequate remedy at law, as evidenced by customer concerns regarding the durability of FLIR's Cameras after watching the Video.

66.     Unless Defendants are enjoined from continuing their wrongful actions, FLIR will continue to suffer irreparable injury, harm, and damages.  FLIR, therefore, requests that the Court enter a permanent injunction enjoining Defendants from publishing the Video.

C.     **Count Three:  Trade Libel/Commercial Disparagement**

67.     The preceding paragraphs are incorporated herein by reference.

68.     In the Video, Defendants make false and disparaging representations about FLIR and its products.

69.     In the Video, Defendants published, without privilege, false and deceptive statements and representations concerning Fluke's and FLIR's products, including the false representations that, when dropped from a height of 2 meters onto a concrete floor, the FLIR

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

Cameras broke apart upon initial impact, whereas the Fluke Camera remained intact and operable after every drop. Those statements, representations, and depictions of FLIR's products in the Video are false and misleading. The FLIR Cameras did not, as shown in the Video, break upon initial impact. Indeed, in order to convey that false impression, Defendants intentionally made several substantial revisions to the Video and the methodology they chose to disclose.

70. Defendants published the Video on YouTube, Facebook, Twitter, and Fluke's website.

71. The Video is a commercial advertisement and promotion intended to mislead potential customers about the quality of FLIR's products, as evidenced by the intentional selective editing of the Video and methodology that implied the previously discussed falsities.

72. Defendants knew that the statements, representations, and depictions of FLIR's products in the Video were false, or made them with reckless disregard for their truth or falsity.

73. Defendants made the false and deceptive statements and representations in the Video about FLIR and its products with the intent to mislead potential customers about FLIR's products and harm FLIR, as evidenced by Defendants' intentional omissions of the actual Test results from the Video and the subsequently disclosed methodology.

74. Those false and deceptive statements and representations caused and continue to cause special harm to FLIR. In particular, after watching the Video, a Fortune 100 company purchased the Fluke Camera instead of one of the FLIR Cameras because it now thought that FLIR's cameras are "way too sensitive if they get dropped." Three other potential FLIR customers have informed FLIR that because of the Video, they purchased, or seriously considered purchasing, a Fluke camera rather than a FLIR camera. As a direct and proximate result of Defendants' misconduct, FLIR is entitled to actual, compensatory, and consequential

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

damages in an amount to be determined at trial, including, but not limited to, reimbursement for the corrective advertising efforts that FLIR has undertaken, or will undertake, to address Defendants' wrongful conduct.

75.     As evidenced by the continued publication of the Video as a marketing tool on the internet and on Fluke's website, and Defendants' selective editing of the Video, Defendants intended for their publication to mislead potential customers of FLIR.

76.     Defendants intended the publication of those false and misleading facts to result in harm to FLIR's pecuniary interests, or recognized or should have recognized that it was likely to do so.

77.     As a direct and proximate result of Defendants' wrongful conduct, FLIR is entitled to actual, compensatory, and consequential damages in an amount to be determined by the trier of fact, including, but not limited to, reimbursement for the corrective advertising efforts that FLIR has undertaken, or will undertake, to address Defendants' wrongful conduct.

78.     FLIR also requests permanent injunctive relief as authorized by state common law and principles of equity.

79.     Defendants willfully, deliberately, and in bad faith created an advertisement that contains false and misleading statements and representations about FLIR and its products in violation of the law.  Defendants injected the false advertisement into interstate commerce with the intent to mislead, confuse, and deceive potential customers of FLIR and its products.  The false representations made by Defendants in the Video are material.  Indeed, those false representations were intended to deceive, have deceived, and are likely to continue to deceive consumers of FLIR's products and to thereby influence their decision to buy FLIR products.

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

Accordingly, the Video threatens, and is likely, to injure FLIR. In fact, the Video continues to be published on YouTube and on Fluke's website.

80. Defendants' actions are causing FLIR to suffer immediate and irreparable harm. Specifically, Defendants' actions are damaging FLIR's reputation and goodwill for which there is no adequate remedy at law.

81. Unless Defendants are enjoined from continuing their wrongful actions, FLIR will continue to suffer irreparable injury, harm, and damages. FLIR, therefore, requests that the Court enter a permanent injunction enjoining Defendants from publishing the Video.

**D.**     **Count Four: Intentional Interference With Prospective Economic Relations**

82. The preceding paragraphs are incorporated herein by reference.

83. FLIR had prospective economic relationships with various potential customers, including a Fortune 100 company, a building inspection company, a heating and air conditioning company, and others.

84. Defendants were not parties to the prospective economic relationships.

85. Through their design, creation, and publication of the false and misleading Video, Defendants intentionally interfered, without privilege, with the prospective economic relationships or knew that such interference was substantially certain from their actions.

86. Defendants interfered with those relationships through improper means, namely, by making materially false and deceptive representations about FLIR's and Fluke's products. Defendants also interfered with those relationships for an improper purposes, namely, the false and deceptive statements and representations in the Video about FLIR's and Fluke's products were intended to mislead potential customers of FLIR.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

87.     Defendant's interference caused harm to the prospective economic relationship by influencing potential customers to purchase Fluke's cameras instead of FLIR's cameras.

88.     As a direct and proximate result of Defendants' interference, FLIR has suffered damages and, therefore, is entitled to actual, compensatory, and consequential damages in an amount to be determined by the trier of fact, including but not limited to reimbursement for the corrective advertising efforts that FLIR has undertaken, or will undertake to address Defendants' wrongful conduct.

89.     FLIR also requests permanent injunctive relief.

90.     Defendants' actions are causing FLIR to suffer immediate and irreparable harm. Specifically, Defendants' actions are damaging FLIR's reputation and goodwill for which there is no adequate remedy at law.

91.     Unless Defendants are enjoined from continuing their wrongful actions, FLIR will continue to suffer irreparable injury, harm, and damages. FLIR, therefore, requests that the Court enter a permanent injunction enjoining Defendants from publishing the Video.

**E.      Count Five:  Civil Conspiracy**

92.     The preceding paragraphs are incorporated herein by reference.

93.     Fluke and Sierra acted together as a self-described "team" to accomplish an unlawful object or a lawful object by unlawful means, including unfair competition and trade libel/commercial disparagement.

94.     Defendants, whom Sierra's founder and creative director referred to as a "team," had a meeting of the minds whereby they decided to take steps to accomplish their unlawful acts and omissions. Indeed, Sierra was retained and paid by Fluke to assist in the design, creation, and publishing of the false Video. Fluke directed Sierra to edit the Video to make it misleading,

**PLAINTIFF FLIR SYSTEMS, INC.'S SECOND**
          **AMENDED COMPLAINT AND JURY DEMAND**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

and Sierra complied. Sierra also knowingly signed off on a misleading and substantially edited methodology that omitted the actual results of the Test and the proviso: "Imagers were dropped repeatedly <u>until significant exterior damage occurred</u>." (Emphasis added.)

95. Defendants committed one or more unlawful overt acts in furtherance of this conspiracy, including, but not limited to, making and publishing the false and misleading Video.

96. The primary purpose of the Video (and thus the conspiracy), as demonstrated by the revisions to the Video and published methodology, was to unlawfully attain a competitive advantage over FLIR by: (1) disparaging the FLIR Cameras; (2) falsely representing the ruggedness and durability of the Fluke Camera; and (3) on that basis, convincing customers not to purchase FLIR's cameras but, instead, purchase Fluke's cameras. Therefore, the purpose of the conspiracy was to injure FLIR for the financial gain of Fluke.

97. As a direct and proximate result of Defendants' civil conspiracy, FLIR is entitled to actual, compensatory, and consequential damages in an amount to be determined by the trier of fact, including, but not limited to, reimbursement for the corrective advertising efforts that FLIR has undertaken, or will undertake, to address Defendants' wrongful conduct.

98. FLIR is also entitled to an award of punitive damages in an amount to be determined by the trier of fact because Defendants engaged in their tortious actions with malice or with reckless and conscious indifference to the impact of those actions on FLIR.

**F.    <u>Count Six:  Aiding And Assisting</u>**

99. The preceding paragraphs are incorporated herein by reference.

100. Fluke is liable to FLIR for unfair competition and trade libel/commercial disparagement.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

101. Sierra had knowledge of Fluke's wrongful acts but, nevertheless, knowingly advised, encouraged, aided, abetted, and assisted Fluke and its wrongful acts. Indeed, Sierra was retained and paid by Fluke to assist in the design, creation, and publishing of the false Video. Fluke directed Sierra to edit the Video to make it misleading, and Sierra complied. Sierra also knowingly signed off on a misleading and substantially edited methodology that omitted both the actual results of the Test and the proviso: "Imagers were dropped repeatedly <u>until significant exterior damage occurred</u>." (Emphasis added.)

102. Sierra also knew that Fluke's claim that the Fluke Camera did not break was false, yet it continued aiding and assisting Fluke with the Video during the following months.

103. As a result of Sierra's assistance and encouragement, Fluke committed the wrongful acts detailed herein.

104. As the direct and proximate result of the Defendants' wrongful conduct, FLIR is entitled to actual, compensatory, and consequential damages in an amount to be determined by the trier of fact, including, but not limited to, reimbursement for the corrective advertising efforts that FLIR has undertaken, or will undertake, to address Defendants' wrongful conduct.

105. FLIR is also entitled to an award of punitive damages in an amount to be determined by the trier of fact because Defendants engaged in their tortious actions with malice or with reckless and conscious indifference to the impact of those actions on FLIR.

### G. Count Seven: Agency

106. The preceding paragraphs are incorporated herein by reference.

107. In the alternative to the civil conspiracy and aiding and assisting claims, an agency relationship existed between Fluke, as principal, and Sierra, as agent, with respect to the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

Video and the Test. Sierra's actions in connection with the Video and the Test were undertaken within the scope of its authority as Fluke's agent.

108.     Fluke had the right to, and did, control Sierra's performance with respect to the Video and the Test. Specifically, Fluke retained and paid Sierra to make and publish the false and misleading Video. Fluke directed Sierra to edit the Video to make it misleading, and Sierra complied, even though it knew that its claim that the Fluke Camera did not break was false. Pursuant to Fluke's instruction, Sierra also knowingly published the Video with a misleading and substantially edited methodology that omitted the actual results of the Test and the proviso: "Imagers were dropped repeatedly until significant exterior damage occurred." (Emphasis added.)

109.     As a result, Fluke and Sierra are jointly and severally liable for the actual, compensatory, and consequential damages resulting from their making and publishing of the Video, in an amount to be determined by the trier of fact, including, but not limited to, reimbursement for the corrective advertising efforts that FLIR has undertaken, or will undertake, to address Defendants' wrongful conduct.

110.     FLIR is also entitled to an award of punitive damages in an amount to be determined by the trier of fact because Defendants engaged in their tortious actions with malice or with reckless and conscious indifference to the impact of those actions on FLIR.

**H.     Count Eight:  Declaratory Relief Concerning The Alleged Trademark**

111.     The preceding paragraphs are incorporated herein by reference.

112.     FLIR's request for a declaratory judgment is authorized by 28 U.S.C. § 2201(a) and 15 U.S.C. § 1116.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

113.    As demonstrated above, an actual, substantial, and justiciable controversy exists regarding whether:  (1) the Alleged Trademark is valid; (2) FLIR has infringed the Alleged Trademark; and (3) Fluke's purported claims are barred by, among other things, acquiescence, waiver, estoppel, and laches.

114.    FLIR requests that the Court enter judgment declaring that the Alleged Trademark is invalid and ordering it cancelled because it is merely generic or descriptive and has not acquired secondary meaning – *i.e.*, the Alleged Trademark has not become known to the public as denoting a product of a certain origin.

115.    In the alternative, FLIR requests that the Court enter judgment declaring that: (1) FLIR has not infringed the Alleged Trademark; and (2) any claims Fluke may have had that FLIR infringed the Alleged Trademark are barred by fair use, laches, waiver, acquiescence, and estoppel.

116.    Even if the Alleged Trademark were deemed to be valid, FLIR has not infringed the Alleged Trademark because FLIR's use, if any, is not likely to cause confusion, cause mistake, or deceive consumers.   Indeed, FLIR's use of the Alleged Trademark, if any, constituted fair use because, among other things, the mark was used in good faith to merely describe a characteristic, feature, purpose, or use of FLIR's products and technology and was not used in the trademark sense.

117.    In addition, Fluke is barred from maintaining a suit against FLIR for trademark infringement based on its unreasonable delay in asserting any exclusive rights to the Alleged Trademark because Fluke knew or should have known of FLIR's purported use of the Alleged Trademark for more than two years.  FLIR has relied to its detriment on Fluke's acquiescence

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

and silence and if Fluke were now allowed to maintain a claim for trademark infringement against FLIR relating to the Alleged Trademark, FLIR would be prejudiced.

## VI.

## JURY DEMAND

Plaintiff FLIR hereby demands a jury trial on all claims and defenses.

## VII.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff FLIR Systems, Inc., requests that the Court enter judgment against Defendants Fluke Corporation and Sierra Media, Inc. and award it the following relief:

1. Permanent injunctive relief prohibiting Defendants from publishing the Video and requiring Defendants to take corrective actions to disable all active copies of the Video;

2. Actual, compensatory, consequential, and punitive damages;

3. Disgorgement of Defendants' profits attributable to any cameras that compete with any cameras sold by FLIR for the period beginning on the date the Video was first published and continuing through at least the date the Video is no longer published;

4. A judgment declaring that the Alleged Trademark is invalid and ordering it cancelled;

5. A judgment declaring that FLIR has not infringed the Alleged Trademark;

6. A judgment declaring that any claims Fluke may have had or may ever have based on FLIR's purported infringement of the Alleged Trademark are barred by fair use, laches, estoppel, waiver, unclean hands, and/or acquiescence;

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

7.    An award of reasonable attorneys' fees and costs;

8.    An award of pre-judgment and post-judgment interest at the highest lawful rates; and

9.    Such other and further relief to which it may be justly entitled under law and equity.


DATED this 8th day of July, 2011.

BICKEL & BREWER

By:    s/ C. Dunham Biles
       William A. Brewer III, *pro hac vice pending*
       Michael J. Collins, *appearing pro hac vice*
       C. Dunham Biles, *appearing pro hac vice*
       Telephone 214.653.4000

SCHWABE, WILLIAMSON & WYATT, P.C.
       Devon Zastrow Newman, OSB #014627
       Telephone 503.222.9981

       Attorneys for Plaintiff, FLIR Systems, Inc.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900