1

2

3

4

5

6

7                        **UNITED STATES DISTRICT COURT**

8                             **DISTRICT OF OREGON**

9                             **PORTLAND DIVISION**

10

11

**FLIR SYSTEMS, INC.,** an Oregon                    No. 3:10-cv-00971-HU
12   corporation,
                                                     **OPINION AND ORDER**
13          Plaintiff,

14   v.

15   **FLUKE CORPORATION,** a Washington
     corporation,
16
            Defendants.
17

18   _____

19   Devon Zastrow Newman, Schwabe, Williamson & Wyatt, P.C., Portland,
     Oregon, for plaintiff FLIR Systems, Inc.
20
21   William A. Brewer III, Michael J. Collins, C. Dunham Biles, and
     Robert M. Millimet, Bickel & Brewer, Dallas, Texas, for plaintiff
22   FLIR Systems, Inc.

23
     Kenneth R. Davis II and Parna A. Mehrbani, Lane Powell P.C.,
24   Portland, Oregon, for defendant Fluke Corporation.

25
     Caroline M. McKay, Dane H. Butswinkas, and Matthew V. Johnson,
26   Williams & Connolly LLP, Washington, District of Columbia, for
     defendant Fluke Corporation.
27

28

     Page 1 - OPINION AND ORDER

**HUBEL, J.,**

There are eight *Daubert* motions before the Court in this Lanham Act case: (1) Defendant Fluke Corporation's ("Fluke") motion to exclude the testimony of William Bisenius ("Bisenius"); (2) Fluke's motion to exclude the testimony of Dr. Jacob Jacoby; (3) Fluke's motion to exclude the testimony of Dr. Robert Madding and strike his September 21, 2012 Supplemental Report; (4) Fluke's motion to exclude the testimony of Robert James Seffrin ("Seffrin"); (5) Fluke's motion to exclude the testimony of Bruce Silverman ("Silverman"); (6) Fluke's motion to exclude portions of Dr. Keith Ugone's testimony; (7) Fluke's motion to exclude the testimony of Dr. Allen Waxman; and (8) Plaintiff FLIR Systems, Inc.'s ("FLIR") motion to exclude certain opinions and testimony of Fluke's expert, Dr. Eric Joachimsthaler.   The motions are based on *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-99 (1993) (indicating district courts analyzing the admissibility of scientific opinion testimony under Federal Rule of Evidence 702 must ensure that the testimony is based on scientifically valid principles and is relevant to the facts in issue).

The Ninth Circuit discussed the requirements for admissibility of an expert's opinion in *Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010).  As the Ninth Circuit explained,

> *Daubert* held that Federal Rule of Evidence 702 replaces the old . . . gatekeeping test, [e.g.,] general acceptance in the particular field, with a different test which is, in some respects, more open to opinion evidence. The requirement that the opinion testimony 'assist the trier of fact' 'goes primarily to relevance.' For scientific opinion, the court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one. Shaky but admissible evidence is to be

1   attacked by cross examination, contrary evidence, and
2   attention to the burden of proof, not exclusion. In sum,
    the trial court must assure that the expert testimony
3   both rests on a reliable foundation and is relevant to
    the task at hand.

4   *Primiano*, 598 F.3d at 564 (internal quotation marks and citation

5   omitted).

6        With respect to Bisenius, Fluke seeks to exclude (1) Bisenius'

7   opinion that Sierra Media, Inc. ("Sierra") is not an independent

8   third-party; (2) Bisenius' testimony concerning the state of any

9   thermal imaging cameras after they were dropped in Fluke's testing;

10  (3) Bisenius' opinions regarding what is implied by the drop test

11  video; and (4) Bisenius' opinion that the testing in the drop test

12  video is inconclusive and invalid.

13       Fluke's motion to exclude the aforementioned portions of

14  Bisenius' testimony is granted in part and denied in part. Bisenius

15  will be allowed to (1) define what it means to be an independent

16  person or entity in terms of product testing; (2) explain and opine

17  as to whether the drop test video was inconclusive, invalid or

18  likely to generate results capable of being reproduced; and (3)

19  explain what he observed in comparing the raw footage of the drop

20  testing and the edited version.  Bisenius will not be allowed to

21  testify about whether any particular camera did or did not function

22  after being dropped, nor the implied message of the final video.

23  While Bisenius has the qualifications to opine on the validity of

24  test procedures his background does not render his opinions of

25  assistance to the jury on the thermal imaging cameras' ability to

26  survive the drop test.  That is beyond his expertise.

27       Fluke moves to exclude the testimony of Dr. Jacoby, proffered

28  by FLIR in response to the expert testimony of Dr. Joachimsthaler

Page 3 - OPINION AND ORDER

1  regarding Fluke's IR Fusion mark.  Dr. Jacoby describes the purpose
2  of his report to be the evaluation of the report of Dr.
3  Joachimsthaler.  Dr. Jacoby's report then proceeds to evaluate Dr.
4  Joachimsthaler's report without offering a single positive or
5  affirmative opinion of Dr. Jacoby's.  It is simply a point by point
6  criticism of Dr. Joachimsthaler's report indicating each instance
7  in which Dr. Jacoby believes Dr. Joachimsthaler is wrong.  Dr.
8  Jacoby never offers his opinion on the issues on which Dr.
9  Joachimsthaler was asked to opine.  There is no indication Dr.
10 Jacoby undertook any efforts to familiarize himself with the
11 information Dr. Joachimsthaler evaluated in order to form his own
12 opinions.[1]  *See Advanced Telemedia, LLC v. Charter Commc'ns, Inc.*,
13 No. 05-cv-2662, 2008 WL 6808442, at *1 (N.D. Ga. July 17, 2008)
14 (excluding expert testimony based on similar deficiencies).

15      For the foregoing reasons, and because there is nothing within
16 Dr. Jacoby's report that amounts to more than attorney argument or
17 suggested cross examination subjects for Dr. Joachimsthaler, the
18 motion to exclude Dr. Jacoby is granted.

19      With respect to Dr. Madding, Fluke moves to exclude his
20 testimony regarding a Fluke advertisement that contained a higher
21 resolution photo superimposed onto a lower resolution camera's LCD
22 screen.  Fluke contends that Dr. Madding's testimony concerns
23 matters that are not in dispute and that can be presented to the

24

25 ___
   [1] This is dangerously close to expert testimony that amounts
26 to simply an opinion on the credibility of another witness which is
   not allowed.  *Goodman v. Harris County,* 571 F.3d 388, 399-400 (5th
27 Cir. 2009); *United States v. Schmitz,* 634 F.3d 1247, 1268-69 (11th
   Cir. 2011); *State v. Milbradt*, 305 Or. 621, 624, 756 P.2d 620
28 (1988) (since there are state trademark infringement claims
   involved here).

Page 4 - OPINION AND ORDER

trier of fact via party opponent admissions and lay witness testimony. Fluke also seeks to strike Dr. Madding's September 21, 2012 Supplemental Report and exclude any testimony by him about its contents because it is "inexplicably late" and does not correct any inaccuracies in Dr. Madding's March 12, 2012 affirmative disclosure.

I grant Fluke's motion to strike Dr. Madding's September 21, 2012 Supplemental Report because it was not in compliance with the deadline the Court set for expert witness disclosures. Dr. Madding will not be allowed to testify about its contents. However, in light of the questions the information in Madding's Supplemental Report raise about the accuracy of the Fluke interrogatory response, the disclosed ads, if a proper foundation and authentication is made, might be available to FLIR as impeachment evidence. No ruling is made here in that regard.

Fluke's motion is denied with respect to Dr. Madding's testimony regarding the Fluke advertisement he discovered that contained a high resolution image superimposed onto a low resolution camera's LCD screen. FLIR, not Fluke, controls how FLIR chooses to prove this point.

Next, Fluke challenges Seffrin's testimony that was offered in response to Fluke's damage expert, Serena Morones ("Morones"), and Fluke's branding expert, Dr. Joachimsthaler. Because Seffrin does not rebut Morones' calculations and simply criticizes her assumption of liability, Fluke's motion is granted on this subject. Jury instructions regarding expert witnesses and attorney argument is all that is necessary on this topic with Morones.

1    Fluke's motion also challenges Seffrin's testimony that
2    responds to the affirmative disclosures of Dr. Joachimsthaler,
3    Fluke's motion is denied.  Seffrin in addition to owning and
4    operating dozens of thermal imaging systems manufactured by both
5    FLIR and Fluke and working as a consultant regarding thermal
6    imaging systems over the years since 1984, has, since 1997, ". . .
7    trained and certified thousands of individuals from around the
8    world in the proper selection and use of thermal imaging equipment
9    for a wide variety of applications.  Applications have included,
10   but are not limited to: electrical systems, mechanical systems,
11   roofing systems, building envelopes, and petrochemical processing."
12   With this background Seffrin offers in rebuttal to Dr.
13   Joachimsthaler, opinions about the usefulness of the IR Fusion
14   function of the Fluke thermal imaging cameras, and the importance
15   of the feature to consumers based on his experience working with
16   them over the years.  This is a proper subject matter for him to
17   testify on given his experience, therefore I deny Fluke's motion to
18   exclude this testimony.
19   With respect to Silverman, Fluke contends that  (1) Silverman
20   possesses no specific knowledge or expertise that allows him to
21   opine on "custom and practice" in the commercial handheld thermal
22   imaging industry market; (2) Silverman has no reliable basis for
23   his testimony that consumers are not deceived by FLIR's practice of
24   superimposing higher resolution images onto the LCD screen of lower
25   resolution cameras in its advertisements; and (3) Silverman is not
26   qualified to state his opinions in response to Dr. Joachimsthaler's
27   opinion regarding the IR Fusion mark.
28

Page 6 - OPINION AND ORDER

Here, Fluke's motion to exclude Silverman's testimony is granted in part and denied in part. Silverman has wide experience in the advertising industry developing ad campaigns for a very diverse range of products. This experience however does not include any experience with advertising campaigns in the thermal imaging market. Indeed, when asked about his knowledge and experience of the thermal imaging camera market Silverman gave this testimony:

> Q. Who else cuts and pastes images from higher resolution cameras onto the screens of the lower resolution cameras other than FLIR?
>
> A. I can't answer that.
>
> Q. Okay. Is that something you looked into to determine whether it's a custom and practice in the thermal imaging camera industry?
>
> A. In that industry? No I haven't."

(Mehrbani Decl. Ex. 17 at 209:5-12.)

Therefore, testimony about the custom and practice regarding advertising in the thermal imaging camera industry is outside Silverman's experience and outside his expertise. However, he is allowed to testify about how persuasive ads and in particular the use of images within persuasive ads are developed and presented to consumers generally. Likewise, it is within his area of expertise to testify generally about how a company creates and promotes brand equity for its products in its advertising. What particular features are important to consumers of thermal imaging cameras appears to be completely beyond Silverman's personal knowledge or expertise and therefore is an inappropriate subject for his testimony.

While FLIR contends that all of Silverman's opinions are reliable because they are "based on his specialized knowledge,

Page 7 - OPINION AND ORDER

1  experience, and expertise, which are informed by empirical
2  research," FLIR fails to identify either in its memorandum or at
3  oral argument what empirical research Silverman relies upon.
4  Likewise Silverman identifies none in his expert disclosures.
5  Silverman does offer opinions regarding the use of motion video and
6  photographs in advertising media particularly when they are smaller
7  than life-size images. This general testimony is clearly within his
8  expertise and will be allowed.

9      While it is not clear that FLIR contends that the validity of
10  the IR – Fusion trademark or the laches defense are appropriate
11  subjects for Silverman to opine on, I want to be clear, they are
12  not.

13      Fluke's argument regarding Dr. Ugone's testimony is twofold.
14  First, Fluke asserts that Dr. Ugone's calculations of FLIR's
15  incremental profit per camera to determine lost profits is merely
16  basic arithmetic, not expert in nature, and not helpful to the
17  jury. Second, Fluke argues that Dr. Ugone's "bald assertion" that
18  there is an economic causal link between the drop test video and
19  FLIR's asserted harm is neither based on his economic expertise,
20  nor the result of any reliable methodology. Here, I deny Fluke's
21  motion to exclude Dr. Ugone's testimony as to FLIR's incremental
22  profit per camera to determine lost profits, and I grant Fluke's
23  motion to the extent it seeks to exclude Dr. Ugone's "economic
24  causal link" opinion. In the Court's view, this opinion was not
25  based on a reliable methodology and appears to be based on loose
26  conjecture and speculation. It is little more than an expert
27  telling the jury that the likely arguments from counsel should be

28

1  accepted by the jury and seems free of any discernable anchor to
2  Dr. Ugone's expertise in economics.

3      Fluke moves to exclude Dr. Waxman's testimony in its entirety.
4  In particular, Fluke takes issue with (1) Dr. Waxman's testimony
5  regarding the use of fusion and similar terms by himself and
6  others; (2) Dr. Waxman's opinion that Fluke's IR-Fusion mark
7  registration was inappropriately awarded; (3) Dr. Waxman's opinion
8  as to whether FLIR infringed on Fluke's mark; (4) Dr. Waxman's
9  opinion regarding who invented "image fusion"; (5) Dr. Waxman's
10 opinion regarding Fluke's intellectual property strategies; and (6)
11 Dr. Waxman's opinion as to whether Fluke's brand equity in IR
12 Fusion has been damaged.

13      Here, Dr. Waxman will only be allowed to discuss who coined
14 the term fusion and how/ where he has seen it used.   This
15 information will assist the trier of fact in determining the
16 strength of Fluke's mark.  As a physicist, Dr. Waxman lacks the
17 expertise to testify as to the other portions of his testimony
18 Fluke seeks to exclude.

19      FLIR's argument regarding Dr. Joachimsthaler's testimony is
20 threefold.  FLIR argues that Dr. Joachimsthaler's opinion that (1)
21 Fluke developed brand equity in its IR Fusion mark, (2) FLIR's
22 conduct harmed Fluke's brand, and (3) FLIR has caused a likelihood
23 of consumer confusion should all be excluded because it lacks a
24 reasonable basis.

25      The crux of FLIR's position centers on the fact that Dr.
26 Joachimsthaler did not conduct his own consumer surveys regarding
27 brand equity and consumer confusion.  However, FLIR overlooks the
28 fact that Dr. Joachimsthaler cites a bevy of case-specific
Page 9 - OPINION AND ORDER

1  evidence, including a 2008 survey commissioned by Fluke regarding

2  customer purchasing decisions in his report.    Accordingly, I deny

3  FLIR's motion to exclude Dr. Joachimsthaler's testimony.

4                              ***CONCLUSION***

5        Consistent with the discussion above, and the reasons stated

6  on the record at the time of oral argument, (1) Fluke's motion

7  [#239] to exclude the testimony of Bisenius is GRANTED in part and

8  DENIED in part; (2) Fluke's motion [#233] to exclude the testimony

9  of Dr. Jacob Jacoby is GRANTED; (3) Fluke's motion [#231] to

10 exclude the testimony of Dr. Robert Madding and strike his

11 September 21, 2012 Supplemental Report is GRANTED in part and

12 DENIED in part; (4) Fluke's motion [#235] to exclude the testimony

13 of Seffrin is GRANTED in part and DENIED in part; (5) Fluke's

14 motion [#241] to exclude the testimony of Silverman is GRANTED in

15 part and DENIED in part; (6) Fluke's motion [#237] to exclude

16 portions of Dr. Keith Ugone's testimony is GRANTED in part and

17 DENIED in part; (7) Fluke's motion [#244] to exclude the testimony

18 of Dr. Allen Waxman is GRANTED in part and DENIED in part; and (8)

19 FLIR's motion [#228] to exclude certain opinions and testimony of

20 Dr. Eric Joachimsthaler is DENIED.

21        IT IS SO ORDERED.

22        Dated this 2nd day of November, 2012.

23                              /s/ Dennis J. Hubel

24                         _____
                                DENNIS J. HUBEL
25                         United States Magistrate Judge

26

27

28

Page 10 - OPINION AND ORDER